PEOPLE v EWING (AFTER REMAND)

Docket No. 84137. Argued June 6, 1989 (Calendar No. 4). Decided
August 14, 1990. Rehearing denied *post,* 1243.

John C. Ewing was convicted by a jury in the Jackson Circuit
Court, James G. Fleming, J., of first-degree criminal sexual
conduct, and the court, concluding that the defendant had
engaged in prior similar acts, sentenced him to .life imprison-
ment. The Court of Appeals, Maher, P.J., and Holbrook, Jr.,
and M. R. Stempien, JJ., affirmed in an unpublished opinion
per curiam (Docket No. 86296). The Supreme Court remanded
the case to the Court of Appeals to consider whether the trial
court's conclusion regarding the defendant's prior similar acts
violated *People v Grimmett,* 388 Mich 590 (1972). On remand,
the Court of Appeals, Maher, P.J., and Holbrook, Jr., and
MacKenzie, JJ., vacated the sentence and remanded the case
for resentencing in an unpublished opinion per curiam, con-
cluding that the basis of the sentence, i.e., the finding that the
defendant had carried on a course of conduct involving attacks
on young women over a period of five years, violated *Grimmett.*
On rehearing, the panel clarified its earlier opinion in an
unpublished opinion per curiam, noting that the statement
regarding the defendant's prior course of conduct constituted
an independent finding of guilt on charges not before the court,
and that consideration of the prior acts at sentencing was not
proper because they had not been proven by a preponderance
of the evidence (Docket No. 104146). The people appeal.

In opinions by Justice Brickley, Justice Archer, and Justice
Cavanagh, joined by Justice Levin, the Supreme Court *held:*

The case is remanded to the trial court for an indication of
which facts were relied upon in imposing sentence.

Justice Brickley stated that a sentencing judge should not be
precluded from basing a sentence on facts underlying prior
convictions, pending charges, and uncharged offenses where
those facts have been developed through sworn testimony pre-
sented before the judge. The defendant must be afforded an
opportunity to test the accuracy of those facts, however.

Because in this case the record does not reveal the extent to
which the judge relied upon alleged conduct by the defendant
for which he had not been convicted, the case should be

remanded to the trial court with instructions to the court to explain specifically which conduct, convictions, or charges played a role in the determination of the defendant's sentence. Thereafter, the defendant should be given an opportunity to challenge the accuracy of the allegations regarding criminal acts for which no conviction had been obtained and upon which the original sentence was based. If the accuracy of the allegations is not proven by a preponderance of the evidence, the original sentence should be vacated and the defendant resentenced.

Justice ARCHER stated that while a trial court may consider the existence of pending charges in sentencing a defendant for a wholly separate offense, there is a fine line between consideration of pending charges and the formation of independent assumptions of guilt. Although a trial court's broad consideration at sentencing can include everything from pending charges to prior convictions, it should not include consideration of evidence introduced at trial with respect to crimes of which the defendant has been acquitted. The resurrection of a favorably resolved past accusation for the purpose of merely contemplating its existence would serve only to unfairly and unnecessarily prejudice a defendant with the probability of improperly drawn inferences of wrongful conduct.

Irrespective of the fact that a trial judge may be apprised of a defendant's prior acquittal through a presentence report or in open court, there is a difference, no matter how inconsequential, between passive knowledge of a fact and its active consideration. While there may not be a formal limit on what can be contained in a presentence report, there are limitations dictated by due process. Fundamental fairness must invasively dominate at least how the presentence information can be judicially utilized.

In the event that a trial court considers pending charges in imposing sentence, a defendant properly should be permitted to raise a challenge to the accuracy of the information. However, where a trial court goes beyond mere consideration of the pending charges to formulate an independent finding of guilt with respect to the charges, a challenge to the accuracy of the information in no way equates with a challenge to the circumstantial guilt or innocence associated with a charge.

Justice CAVANAGH, joined by Justice LEVIN, concurred in the result reached by Justice BRICKLEY and Justice ARCHER.

Justice BOYLE, joined by Chief Justice RILEY, and Justice GRIFFIN, stated that a trial court may consider a wide range of factors at sentencing, including evidence of pending charges,

prior acquittals, and charges that subsequently result in acquittals. The court must be satisfied that the information it relies on in drawing the inference on which the sentence rests is reliable and accurate, and the defendant must have an opportunity to challenge the accuracy of the information. If adequately challenged, the information must be established by a preponderance of the evidence.

The punishment to be given a convicted offender in an indeterminate sentencing scheme is within the discretion of the court, subject only to the limitations imposed by the sentencing statutes and the constitution. The statutes generally do not purport to limit the kinds of matters a court may consider in imposing sentence, and while the constitution clearly limits the considerations of trial courts at sentencing, it also clearly allows consideration of a wide range of matters, including participation in criminal conduct of which the defendant has not been convicted. Any circumstance which aids the sentencing court's construction of a more complete and accurate picture of a defendant's background, history, or behavior is properly considered in individualizing the sentence to fit the offender and not merely the crime. An individualized sentence must be premised on the facts and circumstances of the crime itself, as well as the background of the person convicted of committing the crime. A prior prosecution which does not result in a conviction, as well as criminal activity for which the defendant has not been prosecuted, nevertheless may reflect wrongful conduct that can be a proper consideration at sentencing, provided the defendant is given a chance to rebut or explain. Where the record of the trial, the plea proceeding, or the sentencing report contains evidence supporting a sentencing factor, the trial court must exercise discretion in deciding whether to entertain further proofs.

*Grimmett* provides that a sentence must be based on inferences drawn from accurate information and that when the commission of an offense is disputed an unverified offense or activity cannot be relied upon at sentencing. In this case, the evidence on which the trial court concluded that the defendant had engaged in a course of conduct involving attacks on young women over a period of five years concerned sentencing factors proper under *Grimmett*. In addition, the factors were supported by a preponderance of the evidence, and the defendant was given adequate opportunity at sentencing to challenge the accuracy of the information.

*Frank J. Kelley,* Attorney General, *Louis J.*

*Caruso,* Solicitor General, *Joseph S. Filip,* Prosecuting Attorney, and *Jerrold Schrotenboer,* Chief Appellate Attorney, for the people.

State Appellate Defender (by *Sheila N. Robertson*) for the defendant.

AFTER REMAND

Brickley, J. I am unable to agree entirely with the analysis adopted in the opinions of either Justice Boyle or Justice Archer. I believe that the trial judge was entitled to base his sentence not only on the defendant's prior conviction, but also on testimony concerning the underlying facts of the prior conviction, a pending charge, and an uncharged offense. The defendant, however, was denied his right to test the accuracy of these allegations regarding his conduct.

For this reason, it is my opinion that this case should be remanded to the trial court. On remand, the sentencing judge should indicate with greater specificity which facts he relied on in imposing sentence. If the judge determines that he relied on allegations against the defendant which did not result in a conviction, then the defendant must be afforded an opportunity to challenge the accuracy of those allegations. If the judge then determines that the accuracy of those facts has not been determined by a preponderance of the evidence, the defendant should be resentenced. Finally, if a resentencing is ordered, the judge will be entitled to rely on testimony containing facts underlying an acquittal which was obtained after the original sentencing in this case, subject to the defendant's right to dispute the accuracy of that testimony.

I

Defendant Ewing was convicted by a jury of

first-degree criminal sexual conduct. The opinion for reversal accurately summarizes the testimony given at trial and at the pretrial *Golochowicz*[1] hearing, as well as the appellate history of this case. *Post,* pp 463-468 (BOYLE, J.).

In addition, I observe that the defendant, at the time of sentencing, had pled nolo contendere to the first-degree criminal sexual conduct charge involving complainant No. 1. Following his conviction and sentence in this case, the defendant was acquitted of charges arising from the violent sexual assault alleged by complainant No. 3. He was never charged with the crime alleged by complainant No. 6, which the judge at the *Golochowicz* hearing described as a "simple assault."

At the sentencing hearing, the prosecutor urged the court to depart from the guidelines and impose a very lengthy sentence. The prosecutor not only emphasized the defendant's convictions involving the 1979 assault on complainant No. 1 and in the present case, but also insisted that the court rely on allegations against the defendant which had not resulted in convictions.

The prosecutor vehemently argued that a sentencing judge should be able to make assumptions about a defendant's guilt of separate criminal charges, and he urged the trial judge to "have . . . the guts to do something more to look beyond the substance of this particular case in the form of it just on the record."[2]

The defendant objected on the record, prior to

---

[1] *People v Golochowicz,* 413 Mich 298; 319 NW2d 518 (1982).

[2] In apparent reference to *People v Grimmett,* 388 Mich 590; 202 NW2d 278 (1972), Prosecutor Filip opined:

> Mr. Ewing can commit as many criminal sexual conducts as he wants to in any County he wants to throughout the State of Michigan and he is going to get one sentence . . . .

\* \* \*

the imposition of sentence, to the consideration of arrests or any charged offense not resulting in conviction as evidence of guilt in imposing sentence. The trial court did not respond to the defendant's objection.[3]

After hearing from the prosecutor and defense counsel, the trial court explained its decision to depart from the guidelines' recommended range of ten to twenty years. In imposing a life sentence, the trial judge stated, inter alia:

> As a part of this overall process a *Golochowicz* Hearing was held in which I very vividly had to hear the testimony of other victims who claimed you assaulted them in some manner or form. I had to make that ruling or determination relative to admissibility of similar testimony in this trial.
>
> It's obvious to me you have carried on a course of conduct involving attacks on young women over a periods [sic] of five years.

II

The judge's references to the witnesses produced at the *Golochowicz* hearing and to a "course of conduct" do not clearly identify particular acts of the defendant. To my mind, neither the defendant,

There was another victim here that testified in this particular Court. There is [sic] two or three other ones that have identified Mr. Ewing that they have not been charged with. So we have five, six, seven different instances, and the Michigan Supreme Court says sentence John Ewing once and do it in Washtenaw County and to hell with [complainant No. 4]; don't do anything in Jackson County. *I think that's a disgusting position for the Michigan Supreme Court?* And I urge the Court not to fall into that particular situation. [Emphasis added.]

[3] It is true, as the opinion for reversal observes, that the defendant did not specifically contest the accuracy of allegations underlying such charges. His objection, however, to any use of these allegations—in my opinion a reasonable reading at that time of *Grimmett*, n 2 *supra*—is sufficient to preserve his right to challenge the accuracy of any allegations upon which the judge relied.

as suggested by Justice BOYLE, nor the trial judge is solely to blame for this ambiguity. The judge has an obligation to articulate reasons for imposing a sentence and to respond to defense challenges to the propriety of using certain information. The defendant, on the other hand, has a duty to raise matters of accuracy and should, as a matter of course, request rulings or findings from the judge when necessary. Here, the defendant clearly objected to the judge's consideration of alleged criminal acts which did not result in convictions, but he received no ruling or explanation from the judge in response to the objection. It is clear that the judge considered the testimony of the similar acts witnesses. However, it is not clear which allegations presented at the *Golochowicz* hearing were considered. Under these circumstances, this case should be remanded to the trial court for further development of the sentencing record. First, the trial court should explain with greater specificity which conduct, convictions, or charges played a role in determining the defendant's sentence. After this is done, the defendant should be given an opportunity to challenge the accuracy of those allegations regarding criminal acts for which no conviction has been obtained and upon which the original sentence was based. If the judge determines that the accuracy of the allegations has not been proven by a preponderance of the evidence, the original sentence should be vacated and the defendant resentenced.

III

If, on remand, the trial judge determines that acts which did not end in conviction contributed to his sentencing decision, the defendant should be permitted to exercise his right to contest the accu-

racy of those allegations in accordance with the American Bar Association Standards.

In *People v Walker*, 428 Mich 261; 407 NW2d 367 (1987), this Court set forth procedures to govern the resolution of disputes at sentencing about the proper scoring of guidelines variables. Specifically, we adopted Standard 18-6.4(c) of the American Bar Association Standards for Criminal Justice. *Walker, supra*, pp 267-268. Paragraph c of this standard requires that the prosecutor prove a disputed variable by a preponderance of the evidence once the defendant has "effectively" challenged its accuracy. *Id.* It is consistent with our policy decision in *Walker* to adopt also paragraph b of the same standard in cases where the defendant is required to rebut pending or uncharged criminal allegations. Standard 18-6.4(b) provides:

> [Where there is a need for further evidence] the sentencing court should conduct a hearing with respect to all material factual disputes arising out of any presentence reports or the evidentiary proffers of the parties. Although the sentencing process should not become a "minitrial," occasions will arise when, in order to ensure that a sentence is not founded on material misinformation, the sentencing court should permit the parties to subpoena witnesses and to cross-examine persons who rendered [such] reports to the court and persons providing information contained in such reports. Hearsay and similar types of information inadmissible at trial may be received in the discretion of the court, but evidence offered by the parties should be subject to cross-examination. The guiding principle should be the provision of an effective opportunity for both parties to rebut all allegations likely to have a significant effect on the sentence imposed. [3 ABA Standards for Criminal Justice (2d ed), Standard 18-6.4(b), p 18-448.]

While Standard 18-6.4(b) stops short of requiring

a trial-type hearing at sentencing because of the great cost to the state and the delay which would result in disposing of cases, it places a limit on the trial judge's discretion to consider some types of disputed information at sentencing without entertaining further proofs at the defendant's request. It should be observed that this procedure focuses on the right to rebut allegations which the judge may rely upon in sentencing, not on the right of allocution. Moreover, the need for a hearing arises only where there exist material disputes regarding facts likely to influence the court's sentencing decision which the court and the parties cannot resolve without such a hearing.[4]

## IV

Because of the possibility of resentencing, it is necessary to determine whether prior acquittals must be disregarded, since the acquittal which occurred *after* the defendant's original sentencing would be a *prior* acquittal at resentencing. I agree with Justice BOYLE and a number of federal decisions that the mere fact of a prior acquittal of charges whose underlying facts are properly made known to the trial judge is not, without more, sufficient reason to preclude the judge from taking those facts into account at sentencing.

## A

While the meaning of a valid criminal conviction is clear, i.e., the jury has found the defendant guilty beyond a reasonable doubt, an acquittal does not necessarily mean that the defendant did not engage in criminal conduct. See *post,* pp 473-474 (BOYLE, J.). As one court explained,

---

[4] *Id.,* Commentary to Standard 18-6.4, p 18-460.

A verdict of acquittal demonstrates only a lack of proof beyond a reasonable doubt; it does not necessarily establish the defendant's innocence. . . . The jury needed only a reasonable doubt to acquit or quite plausibly it may have returned its favorable verdict because of lenity. [*United States v Isom*, 886 F2d 736, 738 (CA 4, 1989).]

Any number of reasons not related to the defendant's factual guilt or innocence may be hypothesized to explain a jury's decision to acquit. For example, a jury may acquit a factually guilty defendant because the prosecution was, for one reason or another, unable to present its best evidence, as would be the case where a strong witness died or disappeared before trial, yet sufficient evidence remained to persuade the prosecutor to proceed to trial. To take another example, it is also true, unfortunately, that a jury may acquit a factually guilty defendant because of confusion with regard to the judge's instructions.[5]

Under our present framework of discretionary sentencing, sentences are based more on an assessment of the offender than on the offense. Were the wisdom of this system a judicial rather than a legislative matter, then arguments in favor of sentencing convicted criminals *solely* on the basis of the conduct for which they have been convicted could well prove persuasive. For better or for worse, however, our discretionary sentencing scheme, like the sentencing guidelines we have implemented to assist the judges who must adhere

[5] In addition, while many crimes are committed which do not result in the institution of criminal charges, evidence of such crimes may be admissible in court. Once again, many reasons can be given for this state of affairs. For example, witnesses disappear and their memories fade over time, considerations of cost effectiveness may dissuade prosecutors from following through on pending charges once a conviction is obtained, and, in this era of overflowing criminal court dockets, plea bargains involving the dismissal of charges have become commonplace.

to that scheme, requires the use of relevant, accurate information about the offender, even though that information does not necessarily relate to the conduct which resulted in conviction and exposure to criminal punishment.

In sum, I agree with the court in *United States v Juarez-Ortega,* 866 F2d 747, 749 (CA 5, 1989):

> Although the jury may have determined that the government had not proved all of the elements of the weapons offense beyond a reasonable doubt, *such a determination does not preclude consideration of underlying facts of the offense at sentencing so long as those facts meet the reliability standard.* [Emphasis added.][6]

**B**

This is not to say that the sentencing judge may rely on the mere *fact* that the defendant was once acquitted of, and therefore had necessarily been bound over on, criminal charges. This issue is not before us today. Nor need we decide whether a bindover on criminal charges necessarily means that the underlying facts have been proven by a preponderance of the evidence in the absence of an effective challenge by the defendant. The sentencing judge in this case was not confronted by the mere fact of a pending charge, an uncharged allegation of criminal conduct, or a previous acquittal. Rather, he took testimony from several witnesses at the *Golochowicz* hearing, one of whom was permitted to testify at trial and was cross-

---

[6] The majority of the federal appellate courts to consider the issue have also held that the conduct underlying a prior acquittal may be used to justify enhancement of sentences under the federal sentencing guidelines, which allow a sentencing judge considerably less discretion than Michigan trial judges presently enjoy. See *United States v Rodriguez-Gonzalez,* 899 F2d 177, 180 (CA 2, 1990), and cases cited therein.

examined. I do not believe that the judge, who was entitled—indeed obligated—to consider a broad range of other information in attempting to impose an appropriate, individualized sentence, should be made to disregard this sworn testimony which he witnessed in his own courtroom.

As noted above, if the judge relied on allegations contained in the testimony of complainant No. 3, then on remand the defendant should be able to test the accuracy of those allegations. See § III. The defendant should not, however, be able to preclude the judge from basing his sentence on this testimony. Since the judge on remand will be aware that a prior jury declined to find the defendant guilty beyond a reasonable doubt in the case involving complainant No. 3, he may hear argument from the parties and decide how to view this testimony in light of the acquittal. Moreover, because of the double jeopardy bar, the defendant will be unlikely to feel pressure not to effectively challenge the accuracy of the allegations underlying what will be, in the event of resentencing, a prior acquittal.

In this context, it is important to bear in mind that we are not presented with the issue whether a defendant may be punished for a crime for which no conviction was obtained; this is clearly unconstitutional. Instead, we are called upon only to determine whether trial judges may, in the exercise of the broad discretion conferred upon them in our sentencing scheme, consider relevant and reliable facts about offenders when selecting appropriate punishment within the legislatively established range for offenses whose commission has been proven beyond a reasonable doubt.

C

In my judgment, it is unnecessary to consider

what relief, if any, is appropriate when a sentencing court considers facts underlying charges pending at the time of sentencing which thereafter end in acquittal. The defendant in this case is entitled to a remand for reasons other than the sentencing judge's reliance on such facts. If the sentencing judge on remand determines that he relied at the original sentencing on the testimony of complainant three, then the defendant, as already discussed, should be able to use his now prior acquittal to challenge the accuracy of the allegations contained in that testimony.

Finally, I am concerned that, in cases involving a sentencing judge's reliance on facts underlying pending charges, a defendant's right to remain silent with respect to pending charges may conflict with the right to contest the accuracy of information upon which a sentence is based. I believe that we should save consideration of the procedures necessary to uphold both rights for an appropriate case.

## V

In sum, it is my judgment that the sentencing judge should not be precluded from basing a sentence on facts underlying prior convictions, pending charges, and uncharged offenses—each of which was present in this case—where those facts have been developed through sworn testimony presented before that very judge. In the case of pending charges, uncharged offenses, and prior acquittals, however, the defendant must be afforded an opportunity to test the accuracy of those facts. Because the record does not reveal the extent to which the judge relied upon alleged conduct by the defendant for which he has not been

convicted, this case should be remanded to the trial court for further development of the sentencing record. What relief, if any, should be given a defendant whose sentence is based on conduct which results in an acquittal after sentencing, and what, if any, procedures should be adopted to protect the defendant's rights to remain silent regarding pending charges and to effectively challenge the accuracy of allegations concerning such charges, are questions to be answered in future cases.

ARCHER, J. (*concurring in part and dissenting in part*). We granted leave to appeal limited to the issues (1) whether the Court of Appeals misapplied the rule of *People v Grimmett,* 388 Mich 590, 608; 202 NW2d 278 (1972), concerning the use of unsupported assumptions of guilt of other crimes as a factor in imposing sentence; and (2) if the Court of Appeals properly applied the rule of *Grimmett* to the facts of this case, whether the Court should overrule or otherwise modify the rule of *Grimmett.*

Although I agree with the remand, I write to express my concern and partial disagreement with some of the conclusions drawn.

I

Initially, I agree that *People v Grimmett,* as read in conjunction with *People v Lee,* 391 Mich 618; 218 NW2d 655 (1974), and *People v Walker,* 428 Mich 261; 407 NW2d 367 (1987), allows a trial court to consider the existence of pending charges in sentencing a defendant for a wholly separate offense. In reading the literal language of the *Grimmett* majority, I see no specific restriction

against a trial court's consideration of such information. Further, this Court in *People v Lee, supra* at 636, accurately noted that there are no formal limitations on the contents of a presentence report; thus, accordingly, a trial judge cannot escape being apprised of a defendant's "antecedents" as a matter of legislative course. See MCL 771.14; MSA 28.1144.

However, I feel it imperative to stress that the fine-line distinction between *consideration* of pending charges and the formation of independent assumptions of guilt, the focal point of *Grimmett,* must never be blurred or diminished. Despite the fact that presentence reports are purposefully very detailed compilations of the defendant's prior and pending matters within the legal system, trial judges are steadfastly charged with the sometimes difficult responsibility of refraining from prejudgment, while, at the same time, dispensing thoroughly contemplated justice.[1] Accordingly, as "unclarified," *Grimmett* still disallows trial judges from assuming guilt as it relates to a defendant's pending charges.

---

[1] Justice BOYLE finds fault with the practical implementation of the rule "trial judges must refrain from prejudgment," in that sentencing judges would be prevented from "inferring defendant's guilt" as to pending charges about which the court has been either generally or specifically apprised. *Post,* p 475. Contrary to what might otherwise be believed, however, such "prevention" is precisely the result intended by this Court in *Grimmett.*

. The phrase "infer[ences of] guilt," found on p 475 of Justice BOYLE's opinion, can be used interchangeably with "assumptions of guilt." As a matter of precedential law in this state, guilt may neither be "inferred" nor "assumed" by a trial judge with regard to pending charges, regardless of *any* evidence heard by that court pertaining to the charge, whether credible or incredible. Thus, her attempt to mitigate the perceived rigidity of the *Grimmett* rule by proposing that sentencing courts "articulate" any inferences drawn, encompasses within it precisely that which *Grimmett* disallows. Consequently, unless Justice BOYLE's intent is to overrule *Grimmett* altogether, the *Grimmett* rule, without exception, forbids unsupported assumptions of guilt, whether articulated or not.

II

The aspect of my disagreement with Justice
Boyle's reasoning concerns what I believe to be
taking the concept of "wide discretion" in impos-
ing sentences one step too far. Although I do
concur that a trial judge's broad consideration at
sentencing can include everything from pending
charges to prior convictions, I cannot agree with
Justice Boyle or the cited federal circuit court of
appeals decisions which allow a trial judge to *rely*
"on evidence of crimes of which the defendant has
been acquitted." See *post*, p 473, n 15.

Once the cloud of suspicion has been removed
from a defendant as to a particular charge, the
facts or circumstances surrounding such removal
should not come before a subsequent sentencing
trial court.[2] In my view, there is no viable justifica-
tion in support of inviting a defendant to engage
in *any* kind of discussion or exchange concerning a
prior exoneration of guilt. This expanded version
of sentencing allocution, which, according to Jus-
tice Boyle, would require an additional and
clearly belated rehashing of a matter which has
been definitively resolved and disposed of, will not
remove, or, in any way, diminish the eminent
danger of precondemnation that would befall a
defendant if this practice were allowed. The resur-

---

[2] Trial judges should never be denied the "evidence of their senses"
or "the reality of their conclusions." *Post*, p 475. However, any well-
reasoned resolution should clearly reflect the exercise of judicial
restraint and circumspection. As noted by Justice Boyle, members of
the judiciary pledge themselves to a standard of decision making
which is considerably higher than that of a layman. Trial courts can
never succumb to layman-like predilections toward those accused of
crimes, i.e., mere accusation, despite a jury or bench-tried acquittal,
equals wrongdoing or outright guilt. The inherent responsibility of a
sentencing judge requires, at least, an unimpeachable approach to
their appointed duty, especially when, as in this context, there is an
inevitable tendency toward "inference" of any kind.

rection of a favorably resolved past accusation[3] for the purpose of merely contemplating its existence would serve *only* to unfairly and unnecessarily prejudice a defendant with the probability of improperly drawn inferences of wrongful conduct.

Irrespective of the fact that a trial judge may be apprised of a defendant's prior acquittal through a presentence report or in open court, there is a difference, no matter how inconsequential, between passive knowledge of a fact and active consideration of the same. There may not be a formal limit on *what* can be contained in a presentence report, "but there are limitations dictated by due process." *People v Lee, supra* at 636. Fundamental fairness, consequently, must invasively dominate at least *how* the presentence information can be judicially utilized, to the extent that trial courts must be willing and able to wade through and separate that which may be factored into a sentencing decision and that which may not. In light of these particular due process considerations, I simply cannot give credence to the reasoning behind my colleague's condonation of a trial court being allowed to consider prior acquittals in sentencing.

III

In the interest of clarity, I express one final

---

[3] Whether a prior acquittal is characterized as "a prior prosecution which does not result in a conviction," *post,* p 474, or favorably resolved past accusation, there is an express difference between allowing a sentencing judge to consider a past conviction and allowing consideration of a past acquittal. The concern is not *which* court resolved the prior accusation, but *how* it was resolved. In the context of sentence imposition, a prior conviction represents an "unfavorably resolved past accusation," so that a sentencing judge would have before it, not only an instant unfavorable resolution, but previous unfavorable resolutions as well. Whereas, if this Court were to allow prior acquittals to be considered in the same fashion, we would be operating on the judicially forbidden assumption that an accused person's guilt should be assumed; vindication or acquittal merely represents prosecutorial inability.

point. In *People v Walker, supra,* the Court discussed how a defendant could properly raise a challenge to the accuracy of information to be considered at sentencing. To that end, this Court adopted the following standard from the American Bar Association Standards for Criminal Justice (2d ed):

> "In reaching its findings on all controverted issues [of fact which are relevant to the sentencing decision], the sentencing court should employ the preponderance of the evidence standard and may treat the contents of a verified presentence report as presumptively accurate, provided, however, that material factual allegations made in the presentence report and effectively challenged by the defendant should not be deemed to satisfy the government's burden of persuasion unless reasonable verification of such information can be shown to have been made [by the person who prepared the presentence report] or adequate factual corroboration otherwise exists in the sentencing or trial record." [*Walker, supra* at 267-268.]

Utilizing *Walker,* Justice BOYLE appears to tread dangerously close to making the assurance that a defendant can seek redress from any trial court sentencing impropriety by challenging the *accuracy* of the information considered at sentencing. Specifically, this "challenge to the accuracy," which, to my understanding, would likely occur when a defendant disputes whether a pending charge, as it appears in the presentence report, is *actually* pending against him, seems, as it stands now, a veiled attempt at providing a defendant with the chance to declare his innocence of a pending charge and, thus, dispel any "unsupported assumptions of guilt" a judge may be entertaining.

In my view, the reach of *Walker* extends only to provide the necessary safeguards for defendants in

the event that a trial court *considers* pending charges in imposing sentence. These safeguards, however, do not extend to the situation arising when a trial court goes beyond mere *consideration* of the pending charges to formulate an independent finding of guilt with respect to such charges. As a practical matter, convicted defendants are at an enormous disadvantage, in terms of their own general credibility, at the sentencing stage of the proceedings. By that time, defendants are in no position to effectively challenge, in any way, a judge who has improperly forged ahead and inferred guilt as to charges pending against them. Above all, however, a challenge to the *accuracy* of a charge in no way equates with a challenge to the circumstantial guilt or innocence associated with a charge. Thus, I find it necessary to emphasize that a *Grimmett* error cannot be remedied under *Walker.* To the contrary, commission of a *Grimmett*-type error would still require reversal for resentencing. See *Grimmett, supra* at 608.

IV

In view of my findings stated above, I agree with Justice BRICKLEY insofar as he would remand to the trial court for the judge to articulate reasons for imposing this sentence and to respond to defense challenges to the propriety of using certain information. *Ante,* p 446. I disagree, however, with Justice BRICKLEY's observations in the balance of his opinion beginning with part IV for the reasons set forth above.

CAVANAGH, J. I concur with Justices BRICKLEY and ARCHER that a remand to the trial court for further development of the sentencing record is warranted. I would reserve any discussion of the

merits of the issues until after the trial court has had an opportunity to develop the record on remand.

Levin, J., concurred with Cavanagh, J.

Boyle, J. We are asked in this case to clarify the rule of *People v Grimmett,* 388 Mich 590, 608; 202 NW2d 278 (1972), prohibiting unsupported assumptions of guilt of other crimes as a factor in sentencing. The Court of Appeals held that, under *Grimmett,* the trial court made such improper assumptions when it stated that defendant Ewing had "carried on a course of conduct involving attacks on young women over a periods [sic] of five years," since that finding was based on evidence excluded from trial following a *Golochowicz*[1] hearing, which evidence thus was not adequately established. We would conclude that the Court of Appeals both misunderstood the rule stated in *Grimmett* and misconstrued the record in this case regarding the evidentiary basis of the defendant's sentence.

While *Grimmett* accurately states that unsupported assumptions of guilt cannot be made at sentencing, the crucial inquiry is under what circumstances the trial court may properly consider any sentencing factor. Properly understood, *Grimmett* stands for the general proposition that a sentence must be based on inferences drawn from accurate information and that, when disputed, an unverified offense or activity cannot be relied on at sentencing. *People v Walker,* 428 Mich 261; 407 NW2d 367 (1987). A trial court may consider a wide range of factors at sentencing, including evidence of pending charges, prior acquittals, and charges which subsequently result in acquittals.

[1] *People v Golochowicz,* 413 Mich 298; 319 NW2d 518 (1982).

However, the court must be satisfied that the information on which it relies is reliable and accurate. The defendant has the right to challenge the accuracy of that information, which, if effectively challenged, must be established by a preponderance of the evidence.

In this case, there is no basis for the conclusion that the trial court relied on inaccurate information in sentencing the defendant. Thus, there is no basis for the claim that the trial court made unsupported assumptions of guilt. The court's sentence was based on information established by a preponderance of the record evidence. Accordingly, we would vacate the decision of the Court of Appeals and reinstate the sentence imposed by the trial court.

I

On September 5, 1984, the defendant pleaded not guilty to a charge of first-degree criminal sexual conduct, MCL 750.520b(1)(f); MSA 28.788(2)(1)(f), for the sexual assault of a seventeen-year-old woman on June 20, 1983. On February 11, 1985, an evidentiary hearing was held to determine whether the plaintiff would be allowed to present evidence at trial of defendant's prior acts, pursuant to MRE 404(b) and *People v Golochowicz,* 413 Mich 298; 319 NW2d 518 (1982). Four women, including the complainant, testified at the hearing that they had been accosted or raped by the defendant in a similar manner.

The first woman (Victim No. 6) testified that on June 23, 1984, the defendant drove past while she was jogging down a country road, then returned on foot and asked if he could jog with her. She stated that she told the defendant to "get away" and that, although he tried to block her, she

jogged past him and hid in the weeds until she saw him drive away. According to the victim, the defendant wore mirrored aviator glasses with a royal blue strap.[2]

The second, a fifteen-year-old woman (Victim No. 1), testified that on July 30, 1979, while riding her bicycle to her babysitting job across the lake, she saw the defendant jogging towards her.[3] She testified that the defendant pulled her off her bike and dragged her into a wooded area about thirty feet from the road. He threw her down on her back, pulled her top over her head, removed the rest of her clothes, and raped her. The victim testified that the defendant told her he would kill her if she told the police or her parents, and to lie there and wait for him to leave before she got up. According to the victim, the defendant wore a gray running suit and aviator-type sunglasses that were very dark.[4]

---

[2] The victim took the license number of the assailant's car, a new tan compact, and two days later reported the incident to the Washtenaw County Sheriff's Department. Three weeks later she viewed a composite sketch and indicated that it resembled her attacker.

The police in Washtenaw and Livingston Counties had just begun coördinating their efforts in this case. It was not until a Washtenaw County sheriff reviewed the suspicious activity complaint involving Victim No. 6, dated June 23, 1984, and noticed some similarities that the defendant became a suspect in the assault involving Victim No. 4, the complainant in the instant case.

During the evidentiary hearing, Washtenaw County Sheriff William Eskridge testified that the defendant, when told about the complaint by Victim No. 6, admitted that he had encountered her on the road and that he was "involved."

[3] She also testified that she had seen the defendant a week before on the same road, and that when he had passed her, he jumped at her before running past.

[4] During cross-examination, the victim further testified that the defendant had told her that he had been watching her. She talked to the police right after the assault, but was unable to identify the man who assaulted her from any of the pictures she was shown. She admitted that when the police showed her pictures of the defendant in 1984, she had not been sure that they were of the man who had assaulted her five years earlier, although she was able to make an identification at the preliminary examination.

The third victim, an eighteen-year-old woman (Victim No. 3), testified that on August 2, 1982, she was assaulted by the defendant while she was jogging. She stated that the defendant, who was jogging on the same road, grabbed her, turned her around, and held her in a choke hold. He told her to be quiet or he would choke her harder. He then took her into the weeds off the side of the road, threw her on her stomach, took off her shirt, put it over her face, and removed the rest of her clothing before he turned her on her back. After he raped her, he told her to count to one hundred before she got up.[5]

The complainant in the instant case (Victim No. 4), testified that on June 20, 1983, while she was jogging near Portage Lake, the defendant jogged up behind her and dragged her into the woods. In the woods, he threw her on her stomach, put her shirt over her face, and removed her clothing before he turned her over on her back. After he raped her, he told her to count to one hundred before she moved and threatened to kill her if she screamed. The victim stated that the defendant wore aviator-style mirrored sunglasses with silver rims.

The trial court held that the plaintiff would be allowed to use only the testimony of Victim No. 3 as a prior act under MRE 404(b), concluding that the acts against Victims 1 and 6 did not sufficiently bear the "signature" of the defendant. On May

The defendant was arrested on August 14, 1984, and charged with first-degree criminal sexual conduct for the sexual assault of Victim No. 1. He pleaded no contest and on December 28, 1984, was sentenced to ten to twenty-five years. The defendant was serving time for this offense when he was tried for the sexual assault of Victim No. 4, the victim in the instant case.

[5] At the evidentiary hearing, the victim identified the defendant as the man who assaulted her. Subsequent to the trial involving the assault of Victim No. 4, the defendant was tried and acquitted for the alleged sexual assault of Victim No. 3.

16, 1985, the jury found the defendant guilty as charged of first-degree criminal sexual conduct. At sentencing, the prosecutor requested that the court impose a lengthy sentence, citing the other alleged, and proven, acts of misconduct, and the physical injury inflicted on the victim in this case. The defendant did not object to the accuracy of any of the other allegations of sexual misconduct contained in the presentence report.[6]

The sentencing guidelines in effect at the time established a recommended minimum of 120 to 240 months (10 to 20 years). The trial court on June 27, 1985, sentenced the defendant to life imprisonment, explaining its departure in part by reference to the various other charges levied against the defendant:

> It's obvious to me you have carried on a course of conduct involving attacks on young women over a periods [sic] of five years. And with the instant crime here was a coldly, calculated and premeditated offense. As I stated, one of the more serious offenses known in the law of Michigan.

[6] The defendant and defense counsel acknowledged receipt of the presentence report, and the defendant's only comment, when asked if he had anything to say, was "No, Your Honor, other than I'm truly sorry for everything that's happened. My letter said everything."

In addition to the information regarding Victims 1, 3, 4, and 6 described above, the presentence report contained information of an assault and battery involving a twenty-six-year-old victim (Victim No. 7) just five days prior to defendant's arrest for the instant offense. The defendant attempted to pull the victim off her bicycle, but she fought back and got the defendant's license number before he left the area. The defendant admitted committing the offense, and the charge was dismissed following his sentencing in December, 1984, for the sexual assault of Victim No. 1.

The report also contained references to a third-degree criminal sexual conduct charge pending in Washtenaw County, occurring on September 29, 1980, involving a fifteen-year-old victim (Victim No. 2), to which the defendant was scheduled to plead to on July 15, 1985, and an attempted assault with intent to commit sexual contact charge pending in Livingston County, occurring on July 26, 1983, involving a woman whose age was not noted (Victim No. 5).

The defendant's conviction was affirmed on appeal in the Court of Appeals.[7] Upon our initial review of that decision, however, this Court remanded the case to the Court of Appeals to consider an issue it had not addressed, namely, whether the trial court's conclusion regarding the "course of conduct" involving attacks on young women over the preceding five years violated the rule in *Grimmett, supra,* by assuming defendant's guilt of certain unresolved charges.[8] On remand, the panel vacated the defendant's sentence and remanded the case to the trial court for resentencing.[9]

Following that decision, the panel granted a rehearing to clarify its earlier opinion.[10] It again concluded that the trial court's statement "that '[i]t's obvious to me you have carried on a course of conduct involving attacks on young women over a periods [sic] of five years,' constituted an independent finding of guilt on charges not before the court, in violation of *Grimmett, supra.*" The panel found that the conclusion must have been based on testimony ruled inadmissible following the *Golochowicz* hearing, holding in part:

> [T]he [trial] court, in finding an "obvious course of conduct over 5 years," clearly based this finding on testimony adduced at the *Golochowicz* hearing, and not on a report of charges pending against defendant. In any event, it is one thing to notice the existence of pending charges and quite another to assume the defendant guilty of those charges.

[7] *People v Ewing,* unpublished opinion per curiam of the Court of Appeals, decided January 29, 1987 (Docket No. 86296).

[8] *People v Ewing,* 429 Mich 866 (1987).

[9] *People v Ewing (On Remand),* unpublished opinion per curiam of the Court of Appeals, decided March 25, 1988 (Docket No. 104146).

[10] *People v Ewing (On Rehearing),* unpublished opinion per curiam of the Court of Appeals, decided August 19, 1988 (Docket No. 104146).

While the former is permissible, *People v Lee,* 391
Mich 618; 218 NW2d 655 (1974), the latter is not,
*Grimmett, supra.*

This Court granted leave to appeal limited to
the issues 1) whether the Court of Appeals mis-
applied the rule of *People v Grimmett, supra,* p
608, concerning the use of unsupported assump-
tions of guilt of other crimes as a factor in impos-
ing sentence, and 2) if the Court of Appeals prop-
erly applied the rule of *Grimmett* to the facts of
this case, whether the Court should overrule or
otherwise modify that rule.

## II

In *Grimmett,* one of three men who robbed a
grocery store was charged with the murder of the
store owner and assault with intent to murder
arising out of the shooting of a customer during
the robbery. Separate trials were held and the first
trial, in which the defendant was charged with
first-degree murder, ended when the trial court
discharged the jury.[11]

Prior to the commencement of the second trial
on that charge, the defendant was arraigned, tried,
and convicted on the assault with intent to commit
murder charge. At sentencing, the trial judge com-
mented, " 'while [the defendant] was tried for the
shooting of Mr. Kubon, he is certainly the same

_____

[11] At the murder trial the defendant stated he wished to plead
guilty to second-degree murder on the basis of his understanding that
the information charged murder in the second degree. The prosecutor
declined to accept the plea, contending the information charged first-
degree murder. In his opening statement to the jury, the prosecutor
stated that he intended to prove the crime was premeditated. The
trial court allowed the prosecutor to amend the information by
adding the words "and with premeditation," overruling the defen-
dant's objection to the amendment, and "believing that MCL 767.76;
MSA 28.1016, required the dismissal of the jury when an information
was amended, discharged the jury." *Id.,* p 595.

person who murdered the other grocer, Mr. Shaker Aubrey at the same time.' "

On appeal, this Court stated that the trial court had "wide latitude in sentencing a defendant. The court may consider a defendant's previous convictions, public records concerning the defendant, or even defendant's admissions to the court." *Grimmett,* p 608. It may not, however, go so far as to make "an independent finding of defendant's guilt on the murder charge," because, although "[the defendant] had technically been arrested," he had not been convicted on the murder charge. *Id.*

A

The general rule in most jurisdictions is that the punishment given a convicted offender under an indeterminate sentencing scheme is within the discretion of the court, subject only to the limitations imposed by the sentencing statutes and the constitution. Sentencing statutes, for the most part, do not purport to limit the kinds of matters a court may consider in imposing sentence. The constitution clearly does limit the considerations of the trial court at sentencing.[12] It also clearly allows a sentencing judge to consider a wide range of matters,[13] including participation in criminal

[12] For example, a court may not rely on assumed convictions that, in fact, did not exist, *Townsend v Burke,* 334 US 736; 68 S Ct 1252; 92 L Ed 1690 (1948), and no consideration may be given to a conviction that is obtained in violation of a defendant's constitutional rights. *United States v Tucker,* 404 US 443; 92 S Ct 589; 30 L Ed 2d 592 (1972).

[13] For example, a court may consider the defendant's failure to coöperate with the government, *Roberts v United States,* 445 US 552; 100 S Ct 1358; 63 L Ed 2d 622 (1980), as well as the defendant's demeanor at trial, *United States v Grayson,* 438 US 41; 98 S Ct 2610; 57 L Ed 2d 582 (1978). If the court is convinced that the defendant has perjured himself at trial, that is a valid consideration, even though the defendant has not been convicted of perjury. *Id.,* pp 53-55. Further, even facts disclosed during the course of a prior trial which

conduct of which the defendant has not been convicted. *Williams v New York,* 337 US 241; 69 S Ct 1079; 93 L Ed 1337 (1949).

In reaching the proper sentence, the court's inquiry is broad in scope, largely unlimited either by the kind of information that may be considered or the source from which it comes. To the extent that *Grimmett* appears to limit the trial court's considerations in sentencing to "previous convictions, public records concerning the defendant, or even defendant's admissions to the court," it conflicts with both the general rule and the Court's own explanation that the sentencing judge has "wide latitude" in imposing sentence. As Justice BRENNAN noted in his dissent in *Grimmett,*

> The suggestion that a sentencing court may not delve beyond public records, previous convictions and open-court admissions, is a pernicious departure from our established practice. It would destroy the pre-sentence report as a tool of the administration of criminal justice. It would prevent a defendant from explaining or mitigating a previous conviction, and it would require the people to prosecute to ultimate conviction every known offense against a defendant, even where he stands convicted of one offense, the criminal liability attaching to which is adequate to afford full opportunity for correction and rehabilitation. [*Grimmett, supra,* pp 609-610.]

Within two years of the decision in *Grimmett,* this Court rejected a reading of that case that would limit sentencing considerations to those items listed. *People v Lee,* 391 Mich 618, 638; 218 NW2d 655 (1974). The Court in *Lee* held that a trial court could consider pending, convictionless

ended in an acquittal or was reversed on appeal can be considered by the court. *Id.,* pp 49-50.

charges at sentencing, so long as the record did not indicate that "the court drew false inferences from the presentence report, as in *People v Grimmett* . . . ." *Id.* The Court concluded:

> Therefore, we find that in setting punishment, the trial judge properly considered information in the presentence report prepared by the probation officer. We do not believe it would be a wise policy to restrict the sentencing judge to the information admissible in open court alone. The question of sentencing is properly a matter for the exercise of judicial discretion, and an informed exercise of that discretion requires an individualized factual basis, such as is provided by the presentence report. Without knowledge of a convicted defendant's past life, employment record, criminal record, psychiatric history, if any, and "mental and moral propensities," *Williams v New York,* 337 US 241, 245, it would be difficult for the sentencing judge to free himself in his determination of sentence from the nature of the offense charged and the caliber of the defense at trial. [*Id.,* p 639.]

See also *People v Martin,* 393 Mich 145, 147; 224 NW2d 36 (1974); *People v Henry,* 395 Mich 367, 378; 236 NW2d 489 (1975) (not error to include pending charges in the presentence report for the judge's consideration).

The difficultly in drawing a distinction between *Lee* (the trial court may "notice the existence of pending charges") and *Grimmett* (the trial court may not "use unsupported assumption of guilt of other crimes as a factor" at sentencing) has created a lack of consistency in the Court of Appeals decisions on this issue. See, e.g., *People v Books,* 95 Mich App 500; 291 NW2d 94 (1980); *People v Wiggins,* 151 Mich App 622, 624-625; 390 NW2d 740 (1986) (affirming the trial court's consideration of dismissed charges as well as pending charges).

Compare *People v Rivers,* 147 Mich App 56, 62; 382 NW2d 731 (1985); *People v Carter,* 128 Mich App 541; 341 NW2d 128 (1983), rev'd on other grounds 422 Mich 941; 369 NW2d 853 (1985) (sentencing judge improperly considered trial testimony concerning criminal acts for which the defendant was not convicted).

B

The confusion in the lower courts regarding whether and under what circumstances a court may consider other criminal activity of a defendant which has not resulted in a conviction or charge necessitates some action by this Court to clarify the rule. We would clarify *Grimmett* and hold, in line with the majority of jurisdictions, that any circumstance which aids the sentencing court's construction of a more complete and accurate picture of a defendant's background, history, or behavior is properly considered in individualizing the sentence to fit "the offender and not merely the crime." *Williams, supra,* p 247. An individualized sentence must be premised on the facts and circumstances of the crime itself, as well as the background of the individual convicted of committing the crime. The rule of *Grimmett,* properly understood, stands for the general proposition that a sentence must be based on accurate information.

We also would affirm our recent conclusion in *People v Walker, supra,* that where "effectively challenged," a sentencing factor need be proved only by a preponderance of the evidence. *McMillan v Pennsylvania,* 477 US 79; 106 S Ct 2411; 91 L Ed 2d 67 (1986). Thus, facts regarding criminal acts, like a host of other express or implied findings judges typically make in determining a sentence,

*id.,* p 92, n 8, need not be decided by a jury, or even proven beyond a reasonable doubt or by clear and convincing evidence.

Again, the court is not limited in determining sentence to consideration of only prior convictions, matters of public record, and admissions. Uncharged criminal activity, and activity for which criminal charges are still pending, may be considered by the court,[14] as may criminal activity of which the defendant has been acquitted, whether prior or subsequent to sentencing, so long as it satisfies the preponderance of the evidence test.[15]

[14] We are not troubled, as is Justice BRICKLEY, that the trial court's reliance on charges pending against a defendant may affect his Fifth Amendment right to remain silent with regard to those charges. Clearly, there was no actual violation of the defendant's Fifth Amendment right in this case. The defendant was not compelled to make any statements at sentencing. Nor did the fact that he chose to remain silent result in the imposition of any legal sanctions against him, such as contempt or automatic revocation of probation. *Lefkowitz v Cunningham,* 431 US 801; 97 S Ct 2132; 53 L Ed 2d 1 (1977).

Moreover, there is no indication in the record that the defendant declined to allocute at sentencing out of fear that the statements he made would be used against him, or that what he said at the sentencing hearing *would* be used against him at the later proceeding. Thus, we agree with Justice BRICKLEY that the Court should wait to address the Fifth Amendment issue until it is presented with a case that in fact raises the issue, i.e., one in which the defendant does make statements at the sentencing hearing regarding the pending charges which are then sought to be used against him, or where he is informed that such statements may be used against him and specifically denies to allocute for that reason. See, e.g., *Buchanan v Kentucky,* 483 US 402, 425, n 21; 107 S Ct 2906; 97 L Ed 2d 336 (1987) (holding that if a defendant expresses his desire to refuse to answer a question, a pretrial competency examination can still proceed " 'upon the condition that the results would be applied solely for that purpose' ").

[15] The vast majority of jurisdictions recognize the distinction between the high burden of proof required in guilt determination and the broad inquiry permissible at sentencing, and thus have held that a trial court properly may rely on evidence of crimes of which the defendant has been acquitted. As the United States Supreme Court recently explained in *Dowling v United States,* 493 US —, —; 110 S Ct 668; 107 L Ed 2d 708, 718 (1990):

"[The acquittal did] not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his

In sum, a prior prosecution which does not
result in a conviction, as well as criminal activity
for which the defendant has not been prosecuted,
may nevertheless reflect wrongful conduct that
can be a proper consideration at sentencing, pro-
vided the defendant is given an adequate opportu-
nity to rebut or explain. *United States v Johnson*,
767 F2d 1259 (CA 8, 1985).[16] Where the record of
the trial or of the plea proceeding or the sentenc-
ing report contains evidence supporting a sentenc-
ing factor, "the sentencing judge shall exercise

---

guilt . . . . [T]he jury verdict in the criminal action did not
negate the possibility that a preponderance of the evidence
could show that [the defendant] was engaged in an unlicensed
firearms business." [Citing *United States v One Assortment of
89 Firearms*, 465 US 354, 361-362; 104 S Ct 1099; 79 L Ed 2d
362 (1984). See *Roussell v Jeane*, 842 F2d 1512, 1524 (CA 5,
1988); *United States v Campbell*, 221 US App DC 367, 380; 684
F2d 141 (1982). See also anno: *Court's right, in imposing
sentence, to hear evidence of, or to consider, other offenses
committed by defendant*, 96 ALR2d 768, 768-818. Later Case
Service for 96-100 ALR2d, pp 60-86. *United States v Cardinal*,
782 F2d 34 (CA 6, 1986), cert den 476 US 1161 (1986).]

We recognize the distinction between prior and subsequent acquit-
tals made by Justice BRICKLEY in his concurring opinion. We disagree,
however, that such a distinction can have any basis in either fact or
law, since the argument that there is a difference between the
burdens of proof at trial and at sentencing obtains equally to both.

We also note that at least with regard to our respective interpreta-
tions of the *Grimmett* rule and proper sentencing factors, this distinc-
tion appears to be the only material difference between our opinions.

16 Nor do we find problematic, as did the Court of Appeals, the due
process implications of the trial court's consideration of the facts
underlying defendant's acquittal. The cases cited above stand for the
proposition that in the "parlous" effort to appraise character, *United
States v Hendrix*, 505 F2d 1233, 1236 (CA 2, 1974), cert den 423 US
897 (1975), the court may consider any relevant factor, including
activity that a jury found had not been proved beyond a reasonable
doubt. To allow the court to consider such evidence is not unlike
allowing a jury to consider, at a subsequent proceeding, prior acts of
which the defendant had been acquitted in an earlier proceeding.
*People v Oliphant*, 399 Mich 472; 250 NW2d 443 (1976). Of course, the
conduct must still be proved, though under the preponderance stan-
dard explained above.

discretion in deciding whether to entertain further proofs." *People v Walker, supra,* p 268.[17]

To be sure, trial judges must refrain from pre-judgment. However, the reading of *Grimmett* urged by the defendant and the Court of Appeals would prevent the sentencing judge from inferring defendant's guilt as to offenses concerning which the trial court had heard testimony that actually was credited and that in fact was material to the sentencing decision. Admittedly, some judges may in fact rely on that which they say they are not. Yet, we rely on the trial judges' fidelity to the oath of office and the presumption that they will truthfully set forth the factors relied upon in sentencing. The alternative rule would require trial judges to deny the evidence of their senses and the reality of their conclusions.

III

In this case, the trial court based its conclusion that the defendant had engaged in a course of conduct involving attacks on young women on the testimony it received at the *Golochowicz* hearing. The court immediately prefaced its statement regarding the defendant's course of conduct by commenting that "[a]s a part of this overall process a *Golochowicz* Hearing was held in which I very vividly had to hear the testimony of other victims who claimed you assaulted them in some manner or form. I had to make that ruling or determination relative to admissibility of similar testimony

[17] Justice ARCHER correctly observes that there is a difference between a trial court's findings with respect to the accuracy of a charge contained in the presentence report, and its inferring the defendant's guilt as to that charge. He incorrectly assumes, however, that by a challenge to the accuracy of the charge we mean simply the right to dispute whether a charge has been made against the defendant. The defendant, of course, has the right to contest the facts or information underlying the charge as well.

in this trial." In explaining the reasons for its departure from the guidelines, the trial court stated that "as a result of the *Golowicz* [sic] hearing, it [was] disclosed that [defendant] has carried on a course of conduct involving attacks on young women over a five year period."

The Court of Appeals held that since the testimony of Victims No. 1 and No. 6 was excluded after the *Golochowicz* hearing, it could not be considered by the trial court because it could not have passed the preponderance of the evidence test. However, the question addressed in *Golochowicz, supra,* whether evidence of similar uncharged acts is admissible under Rule 404(b), is wholly distinct from the issue whether evidence of similar charged acts is information which can be considered at sentencing. While we have no occasion here to determine what constitutes the "substantial evidence" required by *Golochowicz,* and thus offer no opinion on the issue of the burden of proof under MRE 404(b), we do observe that the Court of Appeals conclusion that the evidence regarding Victims 1 and 6 must not have been proven by a preponderance of the evidence because it was excluded from trial misconstrues the record. As noted above, the trial judge excluded the testimony because it did not bear the defendant's signature, not because it was unlikely that the defendant actually committed the acts.

More importantly, however, we believe that the Court of Appeals holding misconstrues the issue in this case. The question is not whether the trial judge must *state* that he found the sentencing factor by a preponderance of the evidence, but rather whether, if relied on, the factor is supported by a preponderance of the evidence. In our view, the testimony of each of the victims satisfied the preponderance of the evidence test. Obviously,

the testimony of Victim No. 1, regarding an offense of which the defendant had at that time already been convicted, satisfies that standard, as does the testimony of Victim No. 4, the victim in this case. The testimony of Victim No. 6, regarding the "unsuccessful" assault, an encounter in which the defendant admitted he was "involved," likewise meets the preponderance of the evidence test. Lastly, the testimony of Victim No. 3, who also testified at trial, clearly meets the preponderance test since, although the defendant ultimately was acquitted of that offense, he was bound over for trial after a determination that there was probable cause to believe he had committed the charged act.

We would find, therefore, that the charges explicitly relied upon by the trial court in finding a course of conduct by the defendant have been established by a preponderance of the evidence and that its consideration of those charges did not violate the rule of *Grimmett*. We also note that the record contains additional information, also established, in our view, by a preponderance of the evidence, which supports the trial court's "course of conduct" finding.[18] Thus, not only do each of the above factors meet the preponderance test, taken together they clearly establish by a preponderance of the evidence the trial court's conclusion that the defendant engaged in a course of conduct involving attacks on young women over a period of five years.

We also would find that the defendant was given an adequate opportunity at sentencing to chal-

[18] We refer in particular to the information contained in the presentence report regarding the assault and battery charge against the defendant involving Victim No. 7, which the defendant admitted but which was dismissed following his sentencing in December, 1984, for the offense involving Victim No. 1, and the pending charge of third-degree criminal sexual conduct involving Victim No. 2, for which the defendant was scheduled to enter a plea of guilty on July 15, 1985.

lenge the accuracy of the facts or information underlying these charges and any others contained in the presentence report. We disagree with Justice BRICKLEY's apparent conclusion that the trial court's failure to specifically respond to defense counsel's assertion that he did not believe the court could consider any of the convictionless acts somehow deprived the defendant of the right to challenge the accuracy of the information in the presentence report regarding those acts. The defendant does not claim that he was surprised by this information, and once he and his counsel had received the report he was on notice that the trial court might rely on everything in it, and that the burden was his to convince the court that it should not.

Most importantly, however, the defendant, to this day, has never indicated a desire to challenge those underlying facts. Rather, the only challenge at sentencing—indeed, the only challenge in this Court—was to the court's consideration of such factors in general. The defendant lost that challenge at sentencing, and properly so under our reading of *Grimmett* and *Lee.* He cannot now claim that the trial court's failure to agree that such information could not be considered also deprived him of the right to allocute. As a practical matter, once it became clear that the court would rely on the pending charges or convictionless acts, nothing it said or did prevented the defendant from then challenging the accuracy of the information. This is not a case, in other words, in which, having made its remarks, the court denied the defendant the right to allocute further in response to those remarks.[19]

[19] It is also significant that, despite the absence of any specific challenge to the accuracy of the information contained in it, the trial court explicitly found the presentence report to be "up-to-date [and] based upon competent material."

### CONCLUSION

We would conclude that the reasonable view of *Grimmett,* in light of *Lee,* is that reference to other criminal activity, for which no conviction has resulted, may be included in the presentence report and considered by the court. The defendant must be given the opportunity for refutation. If sufficiently disputed, the accuracy of the information upon which the judge intends to rely in imposing sentence must be established by a preponderance of the evidence, consistent with *People v Walker, supra.*

In this case, there is no basis for the conclusion that the defendant's sentence was increased on the basis of an inference drawn from inaccurate information, and the defendant did have the opportunity to refute that information. Accordingly, we would vacate the decision of the Court of Appeals and reinstate the sentence imposed by the trial court.

RILEY, C.J., and GRIFFIN, J., concurred with BOYLE, J.