# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

GREGORY MATTHEW DOHERTY,

      Defendant-Appellant.

UNPUBLISHED
May 19, 2015

No. 319391
Macomb Circuit Court
LC No. 2012-002899-FH

Before: HOEKSTRA, P.J., and SAWYER and BORRELLO, JJ.

PER CURIAM.

A jury convicted defendant of assault with intent to do great bodily harm less than murder, MCL 750.84,[1] for which the trial court sentenced him as an habitual offender, fourth offense, MCL 769.12, to a term of 76 to 200 months' imprisonment. Defendant appeals as of right, and we affirm.

Defendant was involved in a dating relationship with the complainant. The complainant asserted that after the couple arrived at the home they shared, defendant, who was inebriated and belligerent, began to repeatedly strike her with his fists, causing her to grab a pillow and cower in a fetal position on one side to avoid the harm. The beating left blood on the sheets and pillow and blood splatter on the blinds. The complainant testified that after the beating, defendant turned her over and forcibly engaged in sexual relations. She did not resist or express refusal, because she was in fear. The complainant suffered severe bruising from the beating, and a tooth was knocked out. That weekend, the complainant accompanied defendant to church and to a friend's home. The complainant explained that she was trained in cosmetology and applied makeup to cover her injuries. From the friend's home, the complaint called her daughter to pick her up. As the complaint attempted to leave the friend's home, defendant hit her on the shoulder. The following day, the complainant went to the police, who photographed her injuries. In an interview with a detective, defendant acknowledged striking the complainant at least 20 times. At trial, defendant denied assaulting the complainant and testified that his admission during the

---

[1] The jury acquitted defendant of two additional counts of third-degree criminal sexual conduct, MCL 750.520d(1)(b).

-1-

interview referred to a prior incident. Defendant was convicted of the assault charge, but acquitted of the criminal sexual conduct charges.

Defendant first argues that there was insufficient evidence to support his conviction of assault with intent to do great bodily harm less than murder. We disagree. A challenge to the sufficiency of the evidence is reviewed de novo. *People v Malone*, 287 Mich App 648, 654; 792 NW2d 7 (2010). In examining a sufficiency challenge, we review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013). Circumstantial evidence and reasonable inferences arising from that evidence may constitute proof of the elements of the crime. *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). This Court's review is deferential because the trier of fact, not the appellate court, properly determines what inferences may be fairly drawn from the evidence and the weight to be accorded those inferences. *Malone*, 287 Mich App at 654. Further, we will not interfere with the jury's assessment of the weight of evidence or the credibility of witnesses. *Dunigan*, 299 Mich App at 582; *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012).

The crime of assault with intent to do great bodily harm less than murder requires proof of (1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder. *People v Dillard*, 303 Mich App 372, 377-378; 845 NW2d 518 (2013). Defendant challenges only the intent element. Assault with intent to do great bodily harm is a specific intent crime. *People v Stevens*, 306 Mich App 620, 628-629; 858 NW2d 98 (2014), lv pending. "The intent to do great bodily harm less than murder is 'an intent to do serious injury of an aggravated nature.' " *Id.* (citation omitted). A defendant's state of mind may be inferred from all of the evidence. *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). "Intent may be inferred from a defendant's use of physical violence." *Dillard*, 303 Mich App at 377. Although it is unnecessary for an actual injury to occur, it is proper for the jury to consider the extent of any injury, and there is a presumption that one intends the natural consequences of one's actions. *Id.* at 378. Because of the difficulty in proving an actor's intent, minimal circumstantial evidence is necessary to prove the requisite intent. *Stevens*, 306 Mich App at 628-629. The instigation of a fight, the use of a weapon, and serious injury incurred by the victim are sufficient to demonstrate the intent required for assault with intent to do great bodily harm less than murder. *Id.* at 629.

In the present case, the complainant testified that the couple had a history of domestic violence, and that defendant became violent when he drank alcohol. She stated that after a night of drinking, defendant became angry with her and began to repeatedly strike her with his fists, causing her to cower into a fetal position and grab a pillow for protection. She testified that one of the punches to her face knocked out a tooth. The complainant's injuries were depicted in photographs that were taken four days after the assault. Testimony indicated that the complainant had extensive bruising to her torso that extended to her hip and to her back, and a swollen and bruised face. A police officer stated that he had never seen such injuries sustained by a surviving victim. Defendant admitted in an interview that he struck the complainant approximately 20 times. Although defendant claimed at trial that he was referring to a different incident, the credibility of defendant's testimony was an issue for the trier of fact to resolve, and this Court will not second-guess that determination. *Dunigan*, 299 Mich App at 582. Moreover,

the bloody sheet and pillow, blood splatter on the blinds, and the photographs of the complainant's injuries provided independent corroboration of the complainant's testimony. Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable the jury to find beyond a reasonable doubt that defendant assaulted the complainant, intending to cause her great bodily harm.[2]

Defendant next argues that the trial court erred by refusing to admit the out-of-court statements of Roger "Bill" Strother, a mutual friend of defendant and the complainant, who died before trial. Defendant argues that Strother's statements to the police and to a defense investigator were admissible under MRE 804(b)(7), and that the trial court's exclusion of the statements violated his constitutional right to present a defense. We disagree.

We review a trial court's decision to exclude evidence for an abuse of discretion. *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012); *People v McCray*, 245 Mich App 631, 634-635; 630 NW2d 633 (2001). Whether a defendant suffered a deprivation of his constitutional right to present a defense is reviewed de novo. *People v Steele*, 283 Mich App 472, 480; 769 NW2d 256 (2009).

Defendant does not dispute that Strother's out-of-court statements are hearsay. MRE 801(c). The admission of hearsay evidence is generally prohibited unless it is governed by an exception to the hearsay rule. *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). Defendant argues that Strother's statements were admissible under the catch-all exception in MRE 804(b)(7), which provides:

> *Other Exceptions.* A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact, (B) the statement is more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts, and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of the statement makes known to the adverse party, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

---

[2] Defendant's reliance on *People v Emerson*, 319 Mich 225, 226; 29 NW2d 161 (1947), is misplaced. The complainant's testimony describing the duration and nature of the assault, and the injuries she received, distinguishes this case from *Emerson*.

In *People v Katt*, 468 Mich 272, 279; 662 NW2d 12 (2003), our Supreme Court analyzed MRE 803(24), the identical equivalent to MRE 804(b)(7),[3] and explained that the following four elements must be established to warrant admission of a statement under the rule:

> [E]vidence offered under MRE 803(24) must satisfy four elements to be admissible: (1) it must have circumstantial guarantees of trustworthiness equal to the categorical exceptions, (2) it must tend to establish a material fact, (3) it must be the most probative evidence on that fact that the offering party could produce through reasonable efforts, and (4) its admission must serve the interests of justice. Also, the offering party must give advance notice of intent to introduce the evidence. [*Id*.]

In *People v Lee*, 243 Mich App 163, 178; 622 NW2d 71 (2000), this Court delineated the following factors to determine whether statements have particularized guarantees of trustworthiness considering the totality of the circumstances:

> (1) the spontaneity of the statements, (2) the consistency of the statements, (3) lack of motive to fabricate or lack of bias, (4) the reason the declarant cannot testify, (5) the voluntariness of the statements, i.e., whether they were made in response to leading questions or made under undue influence, (6) personal knowledge of the declarant about the matter on which he spoke, (7) to whom the statements were made . . . , and (8) the time frame within which the statements were made. [Citations omitted.]

A material fact is a fact that is of consequence to the proceeding. *People v Crawford*, 458 Mich 376, 388-389; 582 NW2d 785 (1998).

A police report contains the following narrative description of Strother's statements to the police:

> INTERVIEW WITH ROGER [STROTHER]:
>
> On 07/19/2012 Roger [Strother] arrived at MCSO at about 10 am to speak with me. Roger was escorted to Interview room 2 where I spoke with him about this incident.
>
> Roger advised me that he resides at [REDACTION] Roger told me that he goes by "Bill" and knows both [the complainant] and Gregory Doherty. [The complainant] and Gregory were at his apartment on 07/08/2012. Roger denied seeing any assault and said if he saw Gregory hit [the complainant] then he would have hit Gregory. Roger said that he was watching "the ball game" while [the complainant] and Gregory were arguing. Roger does not know what they were arguing about.

---

[3] MRE 804(b)(7) is applicable when the declarant is unavailable, whereas MRE 803(24) applies to out-of-court statements by an available declarant.

Roger advised that he thinks that [the complainant] and Gregory were at his house on Tuesday 07/03/2012 or Wednesday 07/04/2012 he could not remember because his "days run together". Roger again told me that he has not witnessed any physical assaults between them and did not see Gregory hit [the complainant]. Roger said it is not uncommon for the two to argue because [the complainant] is always leaving Gregory and he takes her back. Roger told Gregory to stop yelling at [the complainant] when she was leaving and said he did not want any trouble at his apartment. Roger said [the complainant] left and called Gregory several times the rest of the night. Roger also said he did not notice [the complainant] having any injuries. Roger did speak with Gregory's mother prior to this interview but she did not tell him what to say to me. Roger did not have any further information. The interview was concluded.

On October 12, 2012, Strother apparently wrote a statement for a defense investigator that provided:

I have known [the complainant] for at least year + ½, Greg the same. We all lived in same Bldg.

On Friday, July 6, 2012, they were both talking about having been to a concert at the festival. [The complainant] was clearly with him on her own free willing.

On July 7 they told me they went to the festival.

On July 8, I picked them up at their house on Grand Street. They told me they had gone to church earlier that day. [The complainant] was free willing to be with Greg. When [the complainant] left she did not have any bruises on her face. After she left [the complainant] phoned Greg at least 5 times.

Initially, Strother's statements do not tend to establish a material fact. Strother's police statement described his observations on July 8. The charged assault was committed on the evening of July 5 and 6. According to the complainant, no one else was present during defendant's assault. Although Strother reported that he did not view any injury to the complainant on July 8, the complainant testified that she used her cosmetology training to cover up her facial bruises with makeup. Furthermore, the predominant injury sustained by the complainant was to her torso or stomach area, extending toward her back, which was covered by her clothing. Strother's statements did not elaborate on what the complainant was wearing or whether such injuries would be visible in light of her clothing.

Moreover, the statements lacked circumstantial guarantees of trustworthiness. Strother's statement to the defense investigator is inconsistent with his police statement. In his police statement, Strother had difficulty identifying dates for his contact with the couple because "his days ran together," and he could not recall what the couple argued about because he did not pay attention to them. His statement to the investigator recalled specific dates and contacts with the couple, and mundane facts such as their attendance at a festival. The investigator statement also references conversations on July 6 and 7, but Strother's police statement did not indicate that he saw or spoke to the couple on those dates. Further, Strother's statement to the investigator that

-5-

the complainant "was clearly with [defendant] of her own free willing" at a concert does not reveal the basis for this conclusion, or indicate that it was based on personal knowledge of the couple's attendance at the concert. Further, there is no indication that the statements were made spontaneously. On the contrary, they were made in the context of investigative interviews, a factor that diminishes the inherent reliability of the statements. In addition, Strother's statements were not the most probative evidence of the complainant's appearance and demeanor with defendant after the assault. Defendant was able to also present the testimony of Reverend Kilcoyne, who testified that he saw defendant and the complainant on the same day that they visited Strother, and that he did not see any bruises on the complainant when she came to his church nor did she appear in fear or distress while she was with defendant. Considering all of the circumstances, the trial court did not abuse its discretion by excluding Strother's hearsay statements.

We also reject defendant's argument that the exclusion of Strother's statements violated his constitutional right to present a defense. Although a defendant has a constitutionally guaranteed right to present a defense, US Const, Am VI; Const 1963, art 1, § 20, *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008), that right may be limited by established rules of procedure and evidence to ensure both fairness and reliability in ascertaining guilt and innocence. *People v Toma*, 462 Mich 281, 294; 613 NW2d 694 (2000). Strother's hearsay statements were inadmissible under established rules of evidence. Further, defendant was permitted to introduce other evidence of the complainant's appearance and demeanor with defendant after the assault through the testimony of Reverend Kilcoyne. Thus, the trial court's exclusion of Strother's hearsay statements did not infringe on defendant's constitutional right to present a defense.

Defendant next argues that the trial court erred in admitting evidence of prior episodes of domestic violence between himself and the complainant. We disagree. The trial court admitted the evidence under MCL 768.27b. Defendant was charged with an offense that qualifies as an act of "domestic violence" against a "household member." See MCL 768.27b(5)(a)(*i*) and (b)(*iv*). Therefore, evidence of defendant's other acts of domestic against the complainant was admissible for any relevant purpose, including to demonstrate defendant's propensity to commit acts of domestic violence against the complainant, subject only to exclusion under MRE 403. MCL 768.27b(1); *People v Cameron*, 291 Mich App 599, 609-612; 806 NW2d 371 (2011).

We disagree with defendant's argument that the evidence should have been excluded under MRE 403 because its probative value was substantially outweighed by its prejudicial effect. In *Cameron*, 291 Mich App at 611-612, this Court explained:

> [T]his Court must make two distinct [inquiries] under the balancing test of MRE 403. First, this Court must decide whether introduction of Cameron's prior-bad-acts evidence at trial was unfairly prejudicial. Then, this Court must apply the balancing test and "weigh the probativeness or relevance of the evidence" against the unfair prejudice. Upon completion of this second inquiry, this Court can determine whether the trial court abused its discretion in allowing Cameron's prior bad acts into evidence.
>
> Under the first inquiry, we conclude that the trial court's decision to allow evidence of Cameron's prior bad acts did not unfairly prejudice Cameron at trial.

The "unfair prejudice" language of MRE 403 " 'refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock.' " Moreover, admission of "[e]vidence is unfairly prejudicial when . . . [the danger exists] that marginally probative evidence will be given undue or preemptive weight by the jury." However, the Michigan Supreme Court also recognizes that the prosecution does not have to use the least prejudicial evidence to make out its case. In this case, the prejudicial effect of other-acts evidence did not stir such passion as to divert the jury from rational consideration of Cameron's guilt or innocence of the charged offenses. In fact, the trial court minimized the prejudicial effect of the bad-acts evidence by instructing the jury that the issue in this case was whether Cameron committed the charged offense.

Under the second inquiry, we conclude that any prejudicial effect of the trial court's decision to allow evidence of Cameron's prior bad acts did not substantially outweigh the probative value of the evidence. A trial court admits relevant evidence to provide the trier of fact with as much useful information as possible. Here, the trial court found that Cameron's prior bad acts were relevant and therefore admissible to establish Yacheson's credibility. The trial court also found that Cameron's actions were relevant to show that he acted violently toward Yacheson and that his actions were not "accidental" at the time of the incident. Additionally, the evidence of Cameron's actions on six separate occasions with Yacheson and on three separate occasions with Ponder [another ex-girlfriend of the defendant] demonstrated Cameron's propensity to commit acts of violence against women who were or had been romantically involved with him.

Therefore, Cameron's prior bad acts were relevant to the prosecutor's domestic violence charge under MCL 768.27b. Any prejudicial effect of admitting the bad-acts evidence did not substantially outweigh the probative value of the evidence, and the trial court did not abuse its discretion when it allowed Cameron's prior-bad-acts evidence to be introduced under MCL 768.27b. [Footnotes omitted.]

As applied to this case, there is no indication that the prior disputes between defendant and the complainant injected considerations extraneous to the case, causing jury bias, sympathy, anger, or shock. Furthermore, the trial court minimized any potential for unfair prejudice by instructing the jury that the issue in the case was only whether defendant committed the charged offenses. Moreover, defendant was permitted to introduce evidence of the circumstances surrounding the prior police contacts, including that he was not arrested for domestic violence as a result of most of the police contacts. Defendant was also permitted to introduce evidence that the complainant's conduct also led to much of the police intervention, and that the complainant had a history of drinking to excess, violence, and disregard of court orders and police instruction to stay away from the other. Indeed, defense counsel used these circumstances to attack the legitimacy of the complainant's prior reports of abuse. Any prejudicial effect of this evidence did not substantially outweigh its probative value. Thus, the trial court did not abuse its discretion by admitting the evidence under MCL 768.27b.

Next, defendant argues that the trial court erred in scoring offense variables 7, 10, and 11 of the sentencing guidelines. We disagree. We review the trial court's factual findings in support of its scoring decisions for clear error, and those findings must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). We review the trial court's application of its findings to the statutory scoring criteria de novo, as a question of law. *Id*.

MCL 777.37 addresses aggravated physical abuse and provides that 50 points are to be scored for OV 7 when a victim was treated with "sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). The evidence at trial indicated that the couple had a tumultuous relationship, coupled with alcohol use that caused violence and requests for police intervention. When defendant first assaulted the complainant, she was pushed into a wall and asked defendant to stop. Instead of stopping, defendant relentlessly punched her 20 to 30 times, causing her to grab a pillow and lie on her side to shield herself from the beating. Defendant then proceeded to sexually assault the complainant, who testified that she was in fear and afraid to ask him to stop or refuse him because of what would happen next. The degree of force exceeded that necessary to commit the assault charge and placed the complainant in greater fear of what would happen next. The trial court did not clearly err in scoring 50 points for OV 7.

Defendant next argues that the trial court erred in scoring 10 points for OV 10, exploitation of victim vulnerability. MCL 777.40(1)(b) directs that 10 points should be scored when the offender "exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status." Exploitation occurs when the victim is manipulated for selfish or unethical purposes. MCL 770.40(3)(b); *People v Cannon*, 481 Mich 152, 157; 749 NW2d 257 (2008). Vulnerability means the apparent susceptibility of the victim to be injured, physically restrained, persuaded, or tempted. MCL 777.40(3)(c); *People v Huston*, 489 Mich 451, 466; 802 NW2d 261 (2011). Susceptibility need not be inherent in the victim, but may arise from the specific circumstances of the crime. *Id*.

The complainant testified that she suffered from multiple physical disabilities and that defendant was aware of her condition. Additionally, defendant was involved in a domestic relationship with the complainant, who testified that she remained with defendant and tolerated his verbal and physical abuse because she did not have a support system, had limited income, and needed a home. The complainant's physical disabilities, coupled with her domestic relationship with defendant, made her particularly vulnerable to abuse by defendant, which defendant exploited through his continued episodes of abuse. Thus, the trial court did not err in assessing 10 points for OV 10.

We also reject defendant's argument that the trial court erred in scoring 25 points for OV 11. OV 11 addresses criminal sexual penetrations, MCL 777.41, and 25 points should be scored when one criminal sexual penetration occurred. MCL 777.41(1)(b). The court is to score all sexual penetrations arising out of the sentencing offense. MCL 777.41(2)(a). A penetration arises from the sentencing offense when there is a connective relationship with the offense. *People v Johnson*, 474 Mich 96, 101-102; 712 NW2d 703 (2006). The complainant testified that defendant sexually assaulted her immediately after the physical assault, and she explained that she did not resist or refuse defendant's sexual advances because she feared that he would beat her again. This testimony establishes a connective relationship between the physical assault and

the sexual assault. Further, the fact that the jury did not convict defendant of criminal sexual conduct did not preclude the trial court from scoring OV 11. At sentencing, a court may consider charges of which a defendant was acquitted if the underlying conduct is proven by a preponderance of the evidence. *People v Ewing*, 435 Mich 443, 454-455, 479; 458 NW2d 880 (1990). The complainant's testimony was sufficient to establish a criminal sexual penetration by a preponderance of the evidence. Because the offense variables were properly scored, defendant is not entitled to resentencing.

Defendant raises additional issues in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4. Initially, there is no merit to defendant's argument that the tardy appointment of appellate counsel affected his substantive rights, particularly his ability to file a postjudgment motion for a new trial or a *Ginther*[4] hearing. The record discloses that defendant's first appointed appellate counsel declined the appointment because of caseload constraints. The trial court thereafter promptly appointed substitute counsel. The timing of the appointment did not affect defendant's ability to file a postjudgment motion in the trial court in accordance with MCR 7.208(B)(1). That rule allows a defendant to file a motion in the trial court after a claim of appeal has been filed "[no] later than 56 days after the commencement of the time for filing the defendant-appellant's brief as provided by MCR 7.212(A)(1)(a)(*iii*)," which in turn references several different events that trigger the commencement of the time for filing a brief. In particular, the latter rule provides:

> In a criminal case *in which substitute counsel is appointed for the defendant*, the time period runs from the date substitute counsel is appointed, the transcript is filed, or a settled statement of facts and certifying order is entered, whichever is later. . . . [Emphasis added.]

Thus, the appointment of substitute counsel had no effect on the time period for filing a post-judgment motion.

We reject defendant's contention that the 56-day time period prescribed in MCR 7.208(B)(1) should be deemed to run "after the 84 day time frame for . . . filing . . . a Supplemental Brief in accordance with administrative order 2004-6." Administrative Order No. 2004-6, Standard 4, provides that a pro se Standard 4 brief must be filed "within 84 days after the appellant's brief is filed by the attorney, but if the case is noticed for submission within that 84-day period, the filing must be received no later than 7 days before the date of submission, or within the 84-day period, whichever is earlier." See 471 Mich cii (2004). Because MCR 7.208(B)(1) does not reference the time period for filing a Standard 4 brief under AO 2004-6, and AO 2004-6 does not itself address the filing of post-judgment motions after a claim of appeal has been filed, there is no basis for concluding that the 56-day period in MCR 7.208(B)(1) begins to run after the 84-day period for filing a Standard 4 brief. When construing a court rule, the plain language of the rule is examined, and if unambiguous, the rule is interpreted as expressed without further construction or interpretation. *People v Lacalamita*, 286 Mich App 467, 472; 780 NW2d 311 (2009). Indeed, it is not even the *filing* of an appellant's brief that triggers the

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

start of the 56-day period in MCR 7.208(B)(1), but rather the *commencement* of the time for filing the appellant's brief. Thus, defendant may not rely on the time period for *filing* a Standard 4 brief to extend the 56-day period permitted under MCR 7.208(B)(1) for filing post-judgment motions after a claim of appeal has been filed.

We further note, however, that the fact that defendant did not file a postjudgment motion within the 56-day period permitted under MCR 7.208(B)(1) would not preclude this Court from either granting an appropriate motion to remand under MCR 7.211(C), or from remanding a case for further proceedings as appropriate under MCR 7.216(A)(5) or (7). Nonetheless, we conclude that such relief is not appropriate because defendant did not file a motion to remand under MCR 7.211(C), and he has not demonstrated that remand for further proceedings is otherwise warranted.

Defendant argues that this case should be remanded to determine whether the trial court improperly ordered the involuntary administration of antipsychotic medication without an appropriate showing that such action was necessary. Defendant relies on *Sell v United States*, 539 US 166; 123 S Ct 2174; 156 L Ed 2d 197 (2003), in which the Supreme Court observed that "the Constitution permits the Government involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests." *Id*. at 179. The Court further stated, however, that "[a] court need not consider whether to allow forced medication for that kind of purpose [i.e., competency to stand trial], if forced medication is warranted for a *different* purpose, such as . . . purposes . . . related to the individual's dangerousness, or purposes related to the individual's own interests where refusal to take drugs puts his health gravely at risk." *Id.* at 181-182 (emphasis in original).

In this case, the documentation on which defendant relies indicates that the administration of medication was ordered by a probate court in response to a petition for hospitalization. It was not ordered by the court in defendant's criminal case. In addition, the documentation indicates that medication was requested because defendant was engaging in bizarre behavior and was a danger to himself and others. There is no indication that medication was requested for trial competency purposes. Therefore, defendant's reliance on *Sell*, and the standards for involuntary administration of drugs for trial competency purposes, is misplaced. Because the record does not factually support defendant's claim that antipsychotic medication was administered for trial competency purposes, remand for further proceedings related to that issue is not warranted.

Affirmed.

/s/ Joel P. Hoekstra
/s/ David H. Sawyer
/s/ Stephen L. Borrello