*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL ALAN LATIMER,

        Defendant-Appellant.

UNPUBLISHED
March 21, 2019

No. 336692
Oakland Circuit Court
LC No. 2015-256955-FC

Before: CAMERON, P.J., and RONAYNE KRAUSE and TUKEL, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of assault with intent to do great bodily harm less than murder, MCL 750.84, and armed robbery, MCL 750.529.[1] Defendant was sentenced concurrently to 57 months to 10 years for the assault with intent to do great bodily harm less than murder conviction and 32 to 99 years for the armed robbery conviction. Finding no error, we affirm.

## I. BASIC FACTS

This case arises from a series of breakings and entering of parked cars late at night by defendant and his conspirators. The victim in the present case lived in a trailer park in Oakland County. On November 17, 2015, the victim, per his usual schedule, left his home at 4:15 a.m. for work. As the victim came out of his home and walked toward his car, he passed a car near his neighbor's home that he did not recognize. The victim did not see anyone in the car at that time. As the victim walked down the sidewalk, he noticed the dome light on in his girlfriend's car. The victim approached his car, opened the driver's side door, and looked inside. The victim

---

[1] Defendant was charged with the crime of assault with intent to commit murder, in violation of MCL 750.83. The jury found him guilty of the lesser-included offense of assault with intent to do great bodily harm less than murder, MCL 750.84.

immediately saw that at all of the paperwork that normally was within the glove box was scattered all over the floorboards and the seats. The victim had not left his car in that condition, so he knew that someone had broken into his car and his girlfriend's car.

After seeing the disrepair inside of his car, the victim saw an individual walking. The person the victm saw was later identified as Colin Feeney, defendant's friend and codefendant. From about 15 to 20 feet away, the victim asked Feeney, "Are you from around here? What are you doing? You've been in my vehicles." Feeney responded, " F*** you old man," and began to run off.

After Feeney ran out of the victim's sight, the victim walked to the side window of his own home, knocked on it, and told his girlfriend to call the Sheriff's Department because someone had been in their cars. As he was inspecting the cars, the victim's girlfriend told him that she saw four people walking toward them. The victim told his girlfriend to go back inside. From a distance of 50 to 60 feet, the victim heard defendant say multiple times "You're going to get stabbed mother f******." The victim also saw Feeney pump his fists in the air and heard him say, "It's a good night to die tonight, b****." Feeney repeated this statement several times as he continued to walk towards the victim and throughout the fight which ensued.

Once defendant was close enough to the victim, the victim saw an object in defendant's hand, which the victim assumed to be a knife, but which in fact was a screwdriver that defendant had stolen from a car. Rather than waiting to be attacked, the victim kicked defendant as hard as he could. Defendant then lunged at the victim, stabbing him in the left part of his chest. All four of the conspirators began attacking the victim, surrounding him, punching and kicking him, and poking him in the eyes with fingers. The victim was bleeding heavily from his head. Nevertheless, defendant attacked the victim with the screwdriver. The victim tried to get on his feet but was unable to because, in his words, as he lay on the ground he was "totally exhausted," could not breathe, and was "choking on his own blood." Defendant and the others continued to kick the victim, while the group, including defendant, yelled, "Yeah, you deserve this mother f******."

After the victim heard police sirens, Feeney and the two girls ran to their car and got in, while the victim tried to hold onto defendant's foot until the police arrived. While the victim was holding defendant, Feeney and the two girls jumped back out of the car "to kick [the victim] before they left." As the victim held onto defendant's foot, defendant punched and kicked the victim in the head and face, "wiggled out" of the victim's hold, and jumped in the car. It was the victim's belief that at the time defendant and the others surrounded the victim, they were not trying to get away or fight him but rather were trying to kill him.

Defendant testified at trial. In his testimony, defendant admitted that he and the three other individuals went to the mobile home park where the victim lived to steal from cars, the idea for which originated with defendant that night. Defendant testified that he went inside approximately six or seven cars without the owners' consent that night. Defendant took spare change, a circular saw, a leaf blower, phone chargers, the screwdriver which he later used to stab the victim, and a handbag full of "miscellaneous hand tools and stuff like that" from the various cars.

Defendant testified that the victim was the aggressor. At some point, defendant related that he heard yelling and ran toward where it originated, at which time he saw Feeney and the victim. Defendant denied saying anything to the victim about being a "mother f*****," that he did not want to kill the victim, and that he did not recall hearing anyone yelling to call the police. Defendant stated that he did not hear Feeney say anything to the victim. It was defendant's testimony that the victim turned toward defendant, approached him, and kicked defendant in the groin "for no reason." Defendant testified that once the victim began attacking defendant, defendant began trying to get away from the victim. Defendant stated that at some point, he reached into his pocket and pulled out the screwdriver that he had stolen from one of the cars. Defendant testified that he stabbed the victim in the back while the victim was on top of him, and also stabbed the victim in the chest. Defendant stated that he stabbed the victim more than once in order to "defend himself." Other evidence at trial established that the victim was stabbed a total of 14 times, and in his trial testimony, defendant stated that he was the only person who had stabbed the victim. As a result of the attack, the victim suffered a punctured lung, a fractured rib, and abrasions and contusions. The victim had a plastic canister in his shirt pocket in which he carried his medications; that canister had a hole all the way through it as a result of defendant's stabbing with the screwdriver.

## II. DISCUSSION

### A. SUFFICIENCY OF THE EVIDENCE AS TO ARMED ROBBERY

Defendant first argues that there was insufficient evidence to convict him of armed robbery. Specifically, defendant contends that the confrontation between himself and the victim was unrelated to defendant stealing property from cars in the mobile home park and his attempt to leave the areas of those crimes. We disagree.

"A challenge to the sufficiency of the evidence in a jury trial is reviewed de novo, viewing the evidence in the light most favorable to the prosecution, to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014). "All conflicts in the evidence must be resolved in favor of the prosecution, and circumstantial evidence and all reasonable inferences drawn therefrom can constitute satisfactory proof of the crime." *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016) (citations omitted). It is the role of the trier of fact to determine the weight of the evidence and the credibility of the witnesses. *People v Stevens,* 306 Mich App 620, 628; 858 NW2d 98 (2014).

The armed robbery statute, MCL 750.529, provides in relevant part:

A person who engages in conduct proscribed under [MCL 750.530] and who in the course of engaging in that conduct, possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon, is guilty of a felony punishable by imprisonment for life or for any term of years.

MCL 750.530 in turn provides that "[a] person who, in the course of committing a larceny of any money or other property that may be the subject of larceny, uses force or violence against any person who is present, or who assaults or puts the person in fear, is guilty of a felony." Thus, MCL 750.530 defines what is commonly known as "robbery" as a larceny by force, while armed robbery is a larceny by force during which a dangerous weapon is possessed. See *People v Williams*, 288 Mich App 67, 71 n 2, 73; 792 NW2d 384 (2010). Michigan has "no statutory definition of larceny, and all our statutes use it in its common law sense." *People v March*, 499 Mich 389, 399-400; 886 NW2d 396 (2016) (quotation marks and citation omitted). The common law definition of larceny is "(a) a trespassory taking and (b) the carrying away (c) of the personal property (d) of another (e) with intent to steal that property." *Id*. at 401. Importantly, for purposes of the robbery statute, a defendant's acts "in the course of committing a larceny" also include those "taken in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property." MCL 750.530(2).

Here, the evidence, including defendant's trial testimony, readily established that he planned and committed the underlying larcenies, which consisted of entering into and stealing items from various parked cars, including the victim's car. For one or more of those larcenies to constitute a robbery, the issue is whether defendant used "force and violence" against the victim. MCL 750.530. We conclude that the evidence was sufficient to establish that defendant used force and violence against the victim "in the course of committing a larceny." The evidence showed that defendant assaulted the victim during defendant's attempted flight from the victim's parked car, in which defendant had committed larceny. Viewing the evidence in the light most favorable to the prosecution, a reasonable jury could conclude that defendant committed an armed robbery. Defendant possessed (and used) a dangerous weapon, a screwdriver, during and after the thefts from numerous cars, including the victim's car, and used the screwdriver to stab the victim fourteen times in "attempted flight after the commission of the larceny," MCL 750.530(2), as the victim tried to hold and restrain defendant pending arrival of the police. Although defendant denied the victim's allegations, stating that he stabbed and beat the victim because the victim had attacked him, the jury certainly was free to credit the victim's version of events rather than defendant's. See *People v Unger*, 278 Mich App 210, 228; 749 NW2d 272 (2008). Therefore, there was sufficient evidence to support the conviction for armed robbery.

## B. APPLICATION OF OV 7

Defendant next argues that the trial court erred when it assessed 50 points for offense variable (OV) 7 because defendant was "not engaged in conduct beyond what was necessary" and he was not "trying to make [the victim's] fear and anxiety any greater." Specifically, defendant asserts that OV 7 should have been scored at zero points because his actions were taken in order to escape from the victim. We disagree.

"Under the sentencing guidelines, the trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015), citing *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error is present when the reviewing court is left with a definite and firm conviction that an error occurred." *McChester*, 310 Mich App at 358 (quotation marks and citation omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions

prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

MCL 777.37(1) provides, in relevant part:

(1) Offense variable 7 is aggravated physical abuse. Score offense variable 7 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) A victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense . . . 50 points

(b) No victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense . . . 0 points

"OV 7 is designed to respond to particularly heinous instances in which the criminal acted to increase that fear by a substantial or considerable amount." *People v Glenn*, 295 Mich App 529, 536; 814 NW2d 686 (2012), rev'd on other grounds by *Hardy*, 494 Mich at 434. "Although 'all crimes against a person involve the infliction of a certain amount of fear and anxiety,' the trial court 'may consider conduct inherent in a crime' when scoring OV 7." *People v Rosa*, 322 Mich App 726, 743, 913 NW2d 392 (2018), citing *Hardy*, 494 Mich at 442.

"[A] defendant's conduct does not have to be similarly egregious to sadism, torture, or excessive brutality for OV 7 to be scored at 50 points, and [] absent an express statutory prohibition, courts may consider circumstances inherently present in the crime when scoring OV 7." *Hardy*, 494 Mich at 443 (quotation marks omitted). In determining whether a "defendant's conduct was designed to substantially *increase* fear, to assess points for OV 7," a sentencing

court must first determine a baseline for the amount of fear and anxiety experienced by a victim of the type of crime or crimes at issue. To make this determination, a court should consider the severity of the crime, the elements of the offense, and the different ways in which those elements can be satisfied. Then the court should determine, to the extent practicable, the fear or anxiety associated with the minimum conduct necessary to commit the offense. [*Id*. at 442-443.]

"[E]xcessive brutality means savagery or cruelty beyond even the 'usual' brutality of a crime." *Glenn*, 295 Mich App at 533. A single blow to the head of a victim during an armed robbery or felonious assault is insufficient to invoke OV 7 because "while certainly illegal and reprehensible," it is "not savage or inhuman in comparison with behavior that has occurred during other armed robberies or felonious assaults." *Id*.

In this case, the trial court determined that defendant's actions "went far beyond the necessary conduct of either of the crimes." The trial court adopted the prosecution's arguments that the fourteen stab wounds constituted excessive brutality and that the action of returning to the victim before fleeing and kicking him in the ribs was designed to substantially increase the fear and anxiety suffered by the victim.

The trial court further noted:

> [T]he statements made at the beginning of the encounter and throughout the encounter, which the [d]efendants as a group talked about what -- it was a good day to die, swearing at the victim, threatening -- you know, telling him he was about to die, that there was a -- what was about to happen. Those would also, I think, increase the fear and anxiety.

The trial court did not clearly err in making its finding as to either excessive brutality or substantially increasing fear and anxiety on the part of the victim. Testimony established that defendant and defendant alone stabbed the victim fourteen times with a screwdriver and repeatedly punched and kicked him in the face and torso. As a result of the attack, the victim suffered a punctured lung, a rib fracture, plus the stab wounds across his chest, back, shoulder, arm, and leg, a bruise around one eye, and abrasions and contusions across his body. Although some of the bruises, abrasions, and contusions may be attributable to codefendants, which are not scorable, the stab wounds were solely attributable to defendant. The number and nature of the stab wounds, 14 in total, is out of proportion to other armed robberies or felonious assaults. Based on defendant's acts of stabbing the victim and his words, we hold that the trial court did not clearly err in finding that defendant used excessive brutality and also sought to substantially increase the fear and anxiety the victim felt during the attack. Accordingly, the trial court did not err when it assessed 50 points for OV 7.

## C. PROPORTIONALITY OF SENTENCE

Defendant's final argument is that his sentence was not proportionate. Specifically, defendant argues that his sentence was disproportionate because he was only 21 years old at sentencing, with no previous felony convictions. Defendant states that all but two of his 16 misdemeanor convictions were not scorable under the guidelines, most were traffic related, and in addition, he apologized to the victim. Thus, defendant argues that his "conduct is entirely taken into consideration in the offense variables[,]" thereby precluding an upward departure from the guidelines. We disagree.

In *People v Lockridge*, 498 Mich 358, 364; 870 NW2d 502 (2015), our Supreme Court severed "MCL 769.34(2) to the extent that it makes the sentencing guidelines range as scored on the basis of facts beyond those admitted by the defendant or found by the jury beyond a reasonable doubt mandatory." The Court also struck "down the requirement in MCL 769.34(3) that a sentencing court that departs from the applicable guidelines range must articulate a substantial and compelling reason for that departure." *Id*. at 364-365. Instead, the Court held, "A sentence that departs from the applicable guidelines range will be reviewed by an appellate Court for reasonableness." *Id*. at 392.

In *People v Steanhouse*, 500 Mich 453; 902 NW2d 327 (2017) (*Steanhouse II*), the Court reaffirmed "that the legislative sentencing guidelines are advisory *in all applications*." *Id*. at 459. The Court also held that "the proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), 'which requires sentences

imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *Steanhouse II*, 500 Mich at 459.

In *People v Dixon-Bey*, 321 Mich App 490, 520-521; 909 NW2d 458 (2017)[2], this Court recently explained the standards applicable to review of a departure sentence:

> "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." In *Steanhouse [II]*, the Michigan Supreme Court clarified that "the relevant question for appellate courts reviewing a sentence for reasonableness" is "whether the trial court abused its discretion by violating the principle of proportionality[.]" The principle of proportionality is one in which
>
>> "a judge helps to fulfill the overall legislative scheme of criminal punishment by taking care to assure that the sentences imposed across the discretionary range are proportionate to the seriousness of the matters that come before the court for sentencing. In making this assessment, the judge, of course, must take into account the nature of the offense and the background of the offender."
>
> Under this principle, " 'the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range.' " [*Dixon-Bey*, 321 Mich App at 521 (citations omitted).]

Thus, the Court continued in *Dixon-Bey*:

> Because the guidelines embody the principle of proportionality and trial courts must consult them when sentencing, it follows that they continue to serve as a "useful tool" or "guideposts" for effectively combating disparity in sentencing. Therefore, relevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range continue to include (1) whether the guidelines accurately reflect the seriousness of the crime, (2) factors not considered by the guidelines, and (3) factors considered by the guidelines but given inadequate weight. [*Id.* at 524-525 (citations omitted).]

"Other factors listed by this Court in *People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015) [(*Steanhouse I*)], rev'd in part on other grounds by [*Steanhouse II*, 500 Mich 453], include 'the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation." *Dixon-Bey*, 321 Mich App at 525 n 9 (citations omitted).

---

[2] Our Supreme Court currently is considering whether to grant leave in *Dixon-Bey*. See *People v Dixon-Bey*, 501 Mich 1066 (2018).

Finally, "[w]hen making this determination and sentencing a defendant, a trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence [i.e., one within the guidelines,] would have been." *Id.* at 525 (quotation marks and citations omitted). "However, this is not to say that the trial court must explain why it chose a twelve-month departure as opposed to an eleven-month departure (or indeed as opposed to any one of countless other potential departures). Rather, the trial court must simply explain why the actual departure that it imposed is justified." *People v Babcock*, 469 Mich 247, 260 n 14; 666 NW2d 231 (2003); see also *People v Smith*, 482 Mich 292, 311; 754 NW2d 284 (2008). Further, when making such an articulation, "the trial court is not required to use any formulaic or 'magic' words in doing so." *Babcock*, 469 Mich at 259.[3]

Thus, defendant's argument in this case that his "conduct is entirely taken into consideration in the offense variables," is simply not of critical importance to whether or not his sentence is proportionate because "the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Steanhouse II*, 500 Mich at 472. Notably, our Supreme Court has expressly rejected dicta suggesting "presumptions of unreasonableness for out-of guidelines sentences." *Id.* at 474. Rather, our principle of proportionality simply "requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Milbourn*, 435 Mich at 636; see also *Steanhouse II*, 500 Mich at 474.

In sentencing defendant, the trial court stated:

The advisory guidelines in this case is a hundred and thirty-five to two hundred and twenty-five months. He's twenty-one years of age. In his tender years, he has managed to rack up sixteen misdemeanors. He's employed, an eleventh grade education. He does have a history of substance abuse as well as psychiatric history. I will note that of the sixteen prior misdemeanors only two were scorable.

He has -- since he's been in custody on this case, he has -- has been issued a category one ticket for assaulting another inmate, and was issued a five-day lockdown for . . . another category one ticket.

We've heard from the victim here in connection with the assault. I -- I will simply incorporate by references testimony in connect -- in this case in connection with the dramatic effect that it's had, very negative effect it's had on his life.

---

[3] *Babcock* was decided prior to *Lockridge*, when a sentence within the guidelines was mandatory absent a "substantial and compelling reason." Given that the guidelines are now advisory, current law provides even less justification for requiring a trial court to use "magic" or "formulaic" words to justify a sentencing decision.

This was a vicious, brutal and despicable attack. I certainly do not punish people for going and invoking the right to a Constitu -- their Constitutional right to have a trial. They are presumed innocent. The People did an exemplary job in disproving that presumption. But it is different when you have a Defendant get on the stand and shift blame, which has happened here. It happened here just now. He said he was the victim despite after already being convicted.

The jury -- jury obviously disbelieved the Defendant's testimony, found very credible the -- obviously beyond a reasonable doubt that the elements of the offenses were committed by the Defendant and convicted him accordingly. This Defendant has to this day disclaims any -- he says I'm responsible, but I'm the victim.

There's some cognitive dissidence [sic—dissonance] going on there. It's very concerning to the Court. Obviously this, as I said before, was a brutal, vicious, and despicable crime. The -- the victim is very fortunate that he survived. There was a terrifying incident as I -- as I stated before, threats at the beginning, threats during the incident, multiple stab wounds, the kicking. He was surrounded by multiple offenders. I have to hand it to the victim, he was very strong at the time, fought those kids off and adults off for a very long time. They did not get what they were expecting. I think they were expecting a very docile person, and he did his best to defend himself.

The guideline range is advisory at this point, and I think for the reasons I've articulated on the record that a very reasonable sentence is as follows:

For assault with intent to commit great bodily harm, fifty-seven months to ten years in the Michigan Department of Corrections, with three hundred and ninety-four days of jail credit. For robbery armed, thirty-two to ninety-nine years in the Michigan Department of Corrections with jail credit of three hundred and ninety-four days.

We find no abuse of discretion on the part of the trial court. The trial court correctly calculated and considered the guidelines, see *Steanhouse II*, 500 Mich at 474-475. The trial court then applied the principle of proportionality, by thoroughly analyzing "the seriousness of the circumstances surrounding the offense and the offender." *Milbourn*, 435 Mich at 636; see also *Steanhouse II*, 500 Mich at 459.

Thus, although defendant argues that he was only 21 years old at sentencing, the sentencing court determined that his extensive criminal history of sixteen misdemeanor convictions outweighed that fact. In addition, although defendant notes he had no *felony* record, his lengthy misdemeanor record nevertheless constituted a significant criminal history. In considering that criminal history, the trial court noted that only two of those misdemeanor convictions were scorable under the guidelines. As we have noted, "the seriousness of the circumstances surrounding the offense and the offender" are the key considerations rather than whether a sentence "departs from or adheres to the guidelines' recommended range," see *Steanhouse II*, 500 Mich at 472, 474. Moreover, the fact that only two of the misdemeanors

-9-

were scorable hurts defendant's position rather than helps it. Because the conduct at issue was not accounted for by the guidelines, the sentencing court was justified in finding that a sentence above the guidelines was warranted by defendant's criminal history. See *Dixon-Bey*, 321 Mich App at 524-525 (providing that one of the relevant considerations justifying a departure includes factors not considered by the guidelines).

Defendant also argues that his "apology" to the victim renders the sentence imposed unreasonable. At sentencing, although he said the word "apologize," defendant did not in fact apologize for his criminal conduct but rather denied criminal culpability, at least for the brutal assaults which resulted in the victim being stabbed 14 times.[4] The trial court was very "concern[ed]" with defendant's so-called apology and noted how it tried to portray defendant as the victim. Given defendant's statements denying criminal culpability, at least for the assaultive crimes, we cannot say that the trial court abused its discretion in relying on this fact. This is particularly so as defendant *twice* denied intending to harm the victim for any reason save justified self-defense, evidencing no slip of the tongue or misstatement on defendant's part. It is well-established that such lack of remorse is an appropriate consideration for purposes of proportionality. See *People v Houston*, 448 Mich 312, 323; 532 NW2d 508 (1995); *People v Wesley*, 428 Mich 708; 411 NW2d 159 (1987). And the trial court's reliance on the fact that the entire episode was a "vicious, brutal and despicable attack" was clearly warranted given the number of times defendant stabbed the victim. Such viciousness has long been a factor that courts can rely on in justifying a departure, even under the stricter standards applicable to the former regime of mandatory guidelines. See *Babcock*, 469 Mich at 249 (noting that if the defendant stabbed his victim multiple times, or in a manner designed to inflict maximum harm, that might constitute a substantial and compelling reason for a departure because these characteristics may have been given inadequate weight in determining the guidelines range).

Finally, the trial court also noted that since defendant had been in custody, he had been issued two tickets for misconduct, one of which involved an assault on another inmate. The trial court was fully justified in relying on " 'the defendant's misconduct while in custody' " as a basis for departing from the guidelines. *Dixon-Bey*, 321 Mich App at 525 n 9, quoting *Houston*, 448 Mich at 323. The fact that defendant's misconduct while in custody again involved assaultive conduct, the same type of behavior for which he was convicted here, also permitted an

---

[4] Defendant stated in relevant part:

> And the whole reason why I even committed an act of violence towards [the victim] was to simply try to get away from him, not to steal anything from him. And when -- anytime that I was involved with [the victim], I was not intending to steal from him, I was intending to get away.

> And ah, I understand that I put myself in that situation and other people, and I understand that I put [the victim] in harm -- in harm's way. And I would like to sincerely apologize to [the victim] for my acts. But yet again, the only reason why I committed an act of violence was to get away from [the victim] not to steal anything from him.

inference by the trial court that "defendant's potential for rehabilitation," was poor, another permissible factor for the trial court to consider. *Id.*

In short, the record is quite clear that the trial court considered the "nature of the offense and the background of the offender," *Milbourn*, 435 Mich at 651, when it discussed the "vicious, brutal and despicable attack" for which it was sentencing defendant. The trial court also carefully analyzed defendant's history and characteristics. Although the trial court did not state that it was imposing a sentence above the guidelines range for particular reasons, that was its implicit ruling: it noted the correct guideline range and the fact that the guidelines are advisory, and listed a host of reasons which support a departure from the guidelines. The trial court was well within its discretion in doing so, as it was not required to use "magic" or "formulaic" words to justify its sentence. *Babcock*, 469 Mich at 259. As this Court noted in *People v Walden*, 319 Mich App 344, 355; 901 NW2d 142 (2017), the greater discretion given to trial courts in the aftermath of *Lockridge* necessarily "constricts an appellate court's wherewithal to find an abuse of discretion." Indeed, the *Steanhouse II* Court pointed out that trial courts were not required to consider "the principle [of proportionality] to the exclusion of any other permissible concepts." *Steanhouse II*, 500 Mich at 473 n 15. Therefore, contrary to defendant's arguments here, and the dissent's separate views that the trial court did not adequately explain the extent of its departure, the trial court fully complied with these principles and did not abuse its discretion.

## III. RESPONSE TO THE DISSENT

We respectfully disagree with the dissent's assertion that the trial judge impermissibly punished defendant for maintaining his innocence and for exercising his right to a trial.[5]

At sentencing, the trial judge commented on his view of the evidence: that defendant and his conspirators threatened the victim verbally, told him they were going to stab him, approached him in a menacing manner prepatory to the attack, and would have attacked first but for the victim, out of self-defense, striking preemptively. In other words, the trial judge stated his belief that defendant's recitation of events was false. Such judicial factfinding is entirely within a sentencing court's discretion. *Lockridge*, 498 Mich at 391-392. However, even if judicial factfinding were generally impermissible, the trial court's sentencing decision here nevertheless would have been completely appropriate because the facts on which the trial court relied are those which the jury found beyond a reasonable doubt.

As the dissent notes, defendant claimed self-defense at trial, asserting that the victim unprovokedly attacked him. When self-defense is asserted, "the prosecutor must prove beyond a reasonable doubt that the defendant did not act in self-defense." M Crim JI 7.20.[6] Thus, the fact

---

[5] At the outset, we note that this issue is being raised sua sponte by the dissent, as defendant did not raise this issue on appeal. As such, this Court ought to decline to address it. See *Froling v Carpenter*, 203 Mich App 368, 373; 512 NW2d 6 (1993) (stating that the appellants' failure to argue an issue in their brief on appeal results in abandonment of the issue).

[6] The trial court in fact gave that instruction, adding, "The Defendant does not have to prove that he acted in self-defense."

that the jury convicted defendant of assault with intent to do great bodily harm means that the jury found that the prosecution *disproved* defendant's claim of self-defense beyond a reasonable doubt. As such, the question of self-defense, and thus the truthfulness of defendant's maintenance of his claim that the victim attacked defendant, rather than the other way around, was rejected beyond a reasonable doubt by the fact-finder. Accordingly, the trial judge at sentencing was free to treat as an established fact the falsity of defendant's claim of self-defense. Consequently, we do not believe that the dissent is on point with its observation that "although the jury did not accept defendant's self-defense claim, the jury *did* accept defendant's purpose for going to trial: that he lacked the intent to kill." The issue at trial was whether defendant was guilty of an offense at all, i.e., whether he was guilty of any assaultive crime, as self-defense would have been a complete defense to either assault with intent to murder or assault with intent to do great bodily harm. And here, the jury necessarily found that defendant did not act in self-defense and therefore was not innocent of either of those crimes. It was that lack of self-defense which the trial court in large measure relied on in imposing sentence. Indeed, "[a]t sentencing, the court is bound by the earlier determination of guilt." *People v Yennior*, 72 Mich App 35, 41; 248 NW2d 680 (1976), rev'd on other grounds 399 Mich 892 (1977). Here, of course, there was much more than a bare finding of guilt—there was the requirement, which was met, that the prosecution prove lack of self-defense beyond a reasonable doubt. Thus, the trial court was fully justified in basing its sentencing decision on the the failure of defendant's self-defense claim, even in light of defendant's continued claims of innocence, as those claims had been categorically and conclusively disproven at trial.

Moreover, in evaluating whether a trial court improperly punished a defendant for maintaining his innocence, this Court has focused on three factors: "(1) the defendant's maintenance of innocence after conviction, (2) the judge's attempt to get the defendant to admit guilt, and (3) the appearance that had the defendant affirmatively admitted guilt, his sentence would not have been so severe." *People v Payne*, 285 Mich App 181, 194; 774 NW2d 714 (2009) (quotation marks and citation omitted). "[I]f there is an indication of the three factors, then the sentence was likely to have been improperly influenced by the defendant's persistence in his innocence. If, however, the record shows that the court did no more than address the factor of remorsefulness as it bore upon defendant's rehabilitation, then the court's reference to a defendant's persistent claim of innocence will not amount to error requiring reversal." *Wesley*, 428 Mich at 713 (opinion by ARCHER, J.).

In this case, the first factor was present—defendant maintained his innocence. But as already noted, particularly in light of the jury's rejection of his claimed self-defense, defendant's maintenance of his innocence carried little weight. But in any event, the other two factors were completely lacking. The trial judge made no attempt to get defendant to admit his guilt. All of the court's comments came after defendant's allocution and were not questions at all but rather observations. Indeed, the trial judge commented that he "would never punish a defendant for going and invoking the right to a Constitu -- their Constitutional right to have a trial." Thus, in this case, the second and third factors overlapped, and neither was present because the trial court made no attempt to get defendant to admit guilt, and therefore could not have created the appearance that if defendant had admitted guilt, the sentence would not have been so severe.

Thus, as in *Wesley*,

> the sentencing judge neither asked defendant to admit his guilt nor offered him a lesser sentence if he did. . . . The court never indicated in any manner that an admission of guilt would reduce the defendant's sentence. If there had been such an indication, then the sentence would have been improperly influenced by the defendant's claim of innocence. Instead, the court focused on the history and character of the defendant as evidenced from the presentence report in determining his potential for rehabilitation. [*Id*. at 716; see also *id*. at 726 (CAVANAGH, J., concurring) ("[T]he trial court made clear that the defendant's assertion of innocence was not a factor which affected the length of the sentence imposed."); *id*. at 727 ("Following a plea of guilty or a trial, a convicted defendant stands before the sentencing judge no longer clothed with the presumption of innocence. While a defendant is certainly free to continue to assert innocence, a sentencing judge should not be required to tip-toe through the metaphysical distinctions required to separate that continued assertion from a lack of remorse.").]

There is another reason as well why the trial court's comments cannot be deemed improper. The U.S. Supreme Court and our Supreme Court have consistently held that acquitted conduct is properly considered at sentencing if a trial court finds by a preponderance that the defendant engaged in the conduct. See *People v Ewing (After Remand)*, 435 Mich 443, 473; 458 NW2d 880 (1990) (stating that a sentencing court may consider "criminal activity of which the defendant has been acquitted, whether prior or subsequent to sentencing, so long as it satisfies the preponderance of the evidence test");[7] *United States v Watts*, 519 US 148, 154; 117 S Ct 633; 136 L Ed 2d 554 (1997) ("[W]e are convinced that a sentencing court may consider conduct of which a defendant has been acquitted.").

---

[7] Apparently the Michigan Supreme Court is considering whether to modify or overrule *Ewing*. In *Dixon-Bey*, it has ordered the parties to address the issue of "whether, when a jury convicted the defendant of second-degree murder, the trial court abused its discretion in applying the principle of proportionality if it either (a) sentenced the defendant according to an independent finding that she committed first-degree murder; or (b) departed upward from the sentencing guidelines for second-degree murder based on facts established by a preponderance of the evidence that the jury did not find were established beyond a reasonable doubt. See MCL 777.36(2)(a); *People v Ewing (After Remand)*, 435 Mich 443; 458 NW2d 880 (1990); *People v Milbourn*, 435 Mich 630, 654; 461 NW2d 1 (1990)." *Dixon-Bey*, 501 Mich at 1067. We of course are duty bound to follow *Ewing* unless and until it has "clearly been overruled or superseded." *Associated Builders & Contractors v Lansing*, 499 Mich 177, 191-192; 880 NW2d 765 (2016). As *Ewing* has not been clearly overruled or superseded, it remains binding upon us.

In almost every instance in which a sentencing court considers acquitted conduct, by definition the defendant's theory of the case is that he or she was not guilty of the offense.[8] Rarely, if ever, does a defendant who has been acquitted of some conduct nevertheless concede his guilt of that offense at sentencing. Thus, such a defendant "maintains his theory of the case" at sentencing, but trial courts nevertheless may appropriately base a sentence on the acquitted conduct. If considering such acquitted conduct constituted improperly punishing a defendant for maintaining his or her trial theory, then the United States and Michigan Supreme Courts in fact would have promulgated a very empty rule in permitting trial courts to consider such evidence *except when* a defendant maintains his trial theory of innocence (i.e., in essentially every case in which a sentencing court considers acquitted conduct). The trial court did not err in basing its sentence on defendant's acquitted conduct of assault with intent to murder, particularly in light of the jury's rejection of defendant's self-defense claim.

As a result, there is no evidence that the trial court punished defendant for asserting his right to a trial; indeed, the court explicitly stated that it never would punish a defendant for asserting that right. And in addition, an evaluation of the *Payne* factors shows that any inference that the trial court punished defendant for asserting his right to a trial is misplaced.

Affirmed.

/s/ Thomas C. Cameron
/s/ Jonathan Tukel

---

[8] An exception is where the acquitted conduct was based on a charge which predated the count on which the defendant is being sentenced. It is the unusual case where the prosecution seeks to rely on such historical acquitted conduct for sentencing purposes; the more common scenario is where a defendant is found guilty of a lesser-included offense, but the prosecution nevertheless seeks to rely on the original charge. See, e.g., *Dixon-Bey*, 501 Mich at 1067 (referring to appropriateness of relying on acquitted conduct of first degree murder for sentencing on lesser-included offense of second-degree murder).