*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
November 21, 2023

Plaintiff-Appellee,

v

No. 363261
Barry Circuit Court
LC No. 2022-000053-FH

KEITH ALLEN HUGGINS,

Defendant-Appellant.

Before: LETICA, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

Following a *nolo contendere* plea, defendant was convicted of felon in possession of a firearm (felon-in-possession), MCL 750.224f, and operating while intoxicated (OWI), third offense, MCL 257.625(9)(c).[1] He was sentenced as a habitual offender, fourth offense, MCL 769.12, to concurrent terms of 10 to 30 years' imprisonment for each offense. Defendant appeals by leave granted,[2] and we vacate and remand for resentencing.

## I. FACTUAL AND PROCEDURAL HISTORY

On January 14, 2022, at 11:43 p.m., defendant's wife called the police to report that defendant was intoxicated, armed with a loaded weapon, and intended to shoot out the windows of a local market. The police arrived at the market. A short time later, defendant drove into the market's parking lot. A police officer positioned his vehicle behind defendant's vehicle. Defendant stepped out of his car and was instructed to approach the officer. As defendant walked toward the officer, he appeared to be unsteady on his feet. Defendant advised the police officer that he was drunk and had a loaded firearm in the car. A loaded rifle was recovered by the police.

---

[1] Three additional weapon offense charges were dismissed.

[2] *People v Huggins*, unpublished order of the Court of Appeals, entered November 15, 2022 (Docket No. 363261).

Defendant consented to a field sobriety test, displaying "clues" of intoxication.[3] He agreed to provide a preliminary breath test sample, and it disclosed a .102 result. The laboratory results from a later blood draw revealed a .091 blood alcohol content. When questioned about the incident,[4] defendant indicated that he was highly intoxicated and believed that he had a flashback from his military service during a war or suffered from other trauma. Additionally, defendant could not recall the impetus for his actions, claiming that he had been "off [his] meds" for several days.

At the plea hearing, the trial court noted that defendant was pleading no-contest to felon-in-possession and OWI, third offense, both five-year felonies, but also possibly constituting life offenses in light of defendant's status as a habitual fourth offender. Defense counsel advised that the foundation for the no-contest plea was a lack of memory arising from defendant's intoxication. The trial court recited the following factual scenario as the bases for the offenses, without delineating the source of the information:

> This happened on or about January 14th of this year, so about a month ago. It happened right here in Barry County. Pursuant to Count I, the Defendant did possess or transport a firearm when ineligible to do so because he . . . had been convicted of an Aggravated Criminal Sexual Abuse, a specified felony, and the requirements for regaining eligibility to possess a firearm had not been met. Pursuant to Count 5, the Defendant was operating a motor vehicle on the roadways after having drunk some amount of alcohol. The amount of alcohol was over Michigan's 0.08 legal limit.

The trial court, with the assistance of counsel, delineated the underlying offenses to support the OWI, third offense, as well as the fourth habitual offender.

In the presentence investigation report (PSIR), it was noted that these offenses for felon-in-possession and OWI, third offense, were defendant's only criminal history in Michigan. It was reported that defendant had a significant criminal history in Illinois, including seven prior felony convictions and five prior misdemeanor convictions.[5] As a result, defendant had been imprisoned

---

[3] Defendant advised that he could not perform the "walk and turn" and "one leg" tests, citing paralysis on the left side of his body.

[4] Because of the plea agreement, the facts are principally derived from the presentence investigation report (PSIR) and the transcripts.

[5] According to the PSIR, defendant was sentenced to four years' imprisonment for aggravated criminal sexual abuse in Illinois in 1987. He was released from prison in November 1988. He was subsequently convicted of driving under the influence and theft offenses between 1989 and 1994. Between 1994 and 2002, defendant was not convicted of any offenses. Between 2002 and 2010, defendant was convicted of drunk driving or assaultive related offenses. He generally received probation or jail terms. However, for an aggravated domestic battery conviction and an unlawful weapon possession conviction committed in Illinois in 2006, defendant received a two-year prison term. Yet, he was released within three months on community supervision. Between

twice, sentenced to jail on five occasions, and placed on probation four times. He had a pending misdemeanor for drunk driving in Louisiana, but it did not appear that there was a warrant for his arrest arising from that charge.

To the probation department, defendant indicated that he was in the United States Army until he received a medical discharge for injuries sustained while serving in Iraq.[6] Defendant stated that he was unemployed and received disability benefits since 2005. For his strengths, the probation department noted that defendant had completed a basic education, received vocational training as a mechanic, served in the United States Army, and cooperated during the interview. Defendant's weaknesses included his substance abuse history, his criminal history, his physical and mental health problems, and his lack of a significant support system. Defendant had no living family members, and his wife sought to evict him from their home while he was in jail.

The probation department calculated the sentencing guidelines range for felon-in-possession at 9 to 46 months. The sentencing guidelines range for OWI, third offense, was calculated at 10 to 46 months. It was also noted that defendant was not eligible for drug or sobriety court because of his no-contest plea, and he was ineligible for alternative incarceration in light of his two prior prison terms as well as his physical and mental health issues. Nonetheless, it was concluded that defendant needed both substance abuse and mental health treatment. Accordingly, the probation department recommended that defendant be given a 24-month period of probation, commencing with a 10-month jail sentence until a placement became available in the Alternative Directions program. This program would purportedly provide defendant with substance abuse and mental health treatment and temporary housing. Defendant would also be required to perform community service.

At sentencing, defendant, who was 54 years old, arrived in a wheelchair. At the commencement of the sentencing hearing, the prosecutor opined that he did not seek to have the PSIR amended, but would include additional facts during his allocution.[7] The prosecutor later noted that defendant actually had five OWI convictions and an additional charge pending in Louisiana. Defendant also pleaded to his second felon-in-possession conviction and had four offenses involving assaultive behaviors. The prosecutor asserted that defendant's actions needed to be placed in context. Specifically, it was alleged that in Eaton County, defendant and his wife were drinking alcohol. Defendant believed that his wife was cheating on him with a fellow employee at the local market. Defendant's wife asserted that defendant punched her in the chest

---

2010 and 2019, defendant was not convicted of any offenses, but was purportedly charged with driving while intoxicated in Louisiana in 2019. The specific details underlying these crimes were not delineated in the PSIR. In January 2022, defendant committed and pleaded guilty to his first underlying Michigan offenses.

[6] In the PSIR, it was noted that defendant's report of years of military service conflicted with his criminal record.

[7] When sentencing began, the trial court inquired of the prosecutor whether there were any additions, deletions, or corrections to the presentence investigation (PSI). The prosecutor responded, "Your Honor, there are more facts that I want to add, but I can do that during my allocution. I don't need to have the PSI[R] amended."

and retrieved a 16-gauge shotgun to shoot at his wife's vehicle. This gun fell apart. Defendant then purportedly went back into the home to retrieve a rifle and ripped the landline from the wall to prevent his wife from calling the police. Defendant allegedly advised his wife that he would kill himself, her, and burn the house down. Defendant also purportedly sent a message to a friend that admitted to the vehicle shooting and his intent to harm his wife and himself.

The prosecutor advised that when defendant was apprehended he admitted to damaging his wife's vehicle but denied striking her. Additionally, defendant acknowledged damaging his wife's vehicle to prevent her from going to the market and having an affair with a coworker. The prosecutor further apprised the court that defendant planned to "do suicide by cop" at the market, but it did not get to that point. The prosecutor requested a sentence of 120 to 360 months, citing the dangerous nature of defendant's crimes that included shooting a weapon, an assault upon his wife, drunk driving, threats of murder/suicide, and a threat to engage law enforcement in a shooting. The prosecutor explained that the sentencing guidelines did not account for the pattern of criminal activity and "the danger that everyone was placed in that night."[8]

Defense counsel stated that defendant suffered from significant mental health and substance abuse issues for which he needed treatment. The program recommended by the

---

[8] Although defendant was charged in Barry County, the prosecutor argued these facts that were delineated in an Eaton County Police Report. There is no indication that this report was part of the Barry County court file. Although the prosecutor attached the report as an appendix purportedly as foundation, this attachment nonetheless constitutes an impermissible expansion of the record on appeal. *People v Morrison*, 328 Mich App 647, 655; 939 NW2d 728 (2019). Moreover, the prosecutor did not apprise the trial court of the contents of this police report that favored defendant. Specifically, defendant's wife acknowledged that defendant had "problems" when he drank, but she reported that he had not been violent with her previously and his actions on this occasion were essentially out of character. To the Eaton County police, defendant denied the physicality of his actions, including striking his wife and disabling the phone by ripping the cord from the wall. Without the submission of the full police report to the trial court and the failure to amend the PSIR to include the contents of the police report, the accuracy of the prosecutor's representations regarding the underlying uncharged criminal acts in Eaton County could not be verified. And, again, the mitigating contents of that police report were not highlighted by the prosecutor. A defendant is entitled to be sentenced premised on accurate information. *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). When the accuracy of sentencing information is challenged, the trial court has a duty to allow the parties to be heard and must make a finding regarding the challenged information or determine that the challenged information will be not relied on in sentencing. *People v Waclawski*, 286 Mich App 634, 689; 780 NW2d 321 (2009). The prosecutor stated that he declined to seek amendment of the PSIR, but nonetheless argued the contents of the Eaton County Police Report. In light of defendant's right to be sentenced premised on accurate information and the prosecutor's attachment of the document on appeal, the amendment would have been the appropriate course of action. See *Francisco*, 474 Mich App at 88; see also MCR 7.210(A)(1).

probation department, Alternative Directions, offered defendant the necessary tools to address his problems.

In his allocution, defendant denied that he intended to engage in "suicide by cop." He explained that, if that was his intent, he would have removed the gun from the car. Instead, defendant indicated that he stepped out of the car with his hands up and advised the officer that there was a gun in the car. When asked by the trial court why he had a gun, defendant stated that he did not know what happened and was unsure if he suffered a flashback from the war. Defendant advised the court that he needed help with his alcoholism and drug use. When the trial court noted that treatment programs had been offered before, defendant stated that he "wasn't ready for it then."

The trial court concluded that the guidelines were "inaccurate" because they did not account for the number of drunk driving offenses and the serious nature of the offenses, particularly when someone could have been injured. Specifically, the trial court stated:

> . . . I think sometimes the guidelines are clearly, in anybody's opinion, lower than what . . . they should be. Even if you're not gonna give a guideline sentence that would be . . . at the maximum -- When you look at the criminal history and you look what happened here, there's no way possible that this should be a 10 to 46 month guideline range. That just shows in this case they're clearly not accurate. They clearly don't fully score . . . this, nor to some extent can they, [be]cause every drunk driving is slightly different. I mean, we kinda stop scorin[g th]em almost at three in our state, between 5 and 12 it doesn't really score any different. Of course the fifth time is different than a twelfth. The felon in possession of a firearm could be . . . a piece of ammunition. It can be a gun that they do nothing with whatsoever, has no ammunition in it, as long as it's fireable or could . . . readily be made to be fireable. It doesn't even . . . have to currently be fireable.

> This is serious. This is really serious. And . . . it's only really . . . [by] the grace of God, or accident on your part, or who knows what, somebody didn't end up dead here. . . . Including you. . . .

> I'm gonna go through the factors here that I have. Seriousness of the crime. This is really serious and the simple charges themselves, Operating While Intoxicated as a third offense, this is in fact a fifth offense, so it's worse than the charge would appear.

> Felon in possession of a Firearm, again, I'm incorporating by reference all of the arguments made by the Prosecutor already. This not just I happened to have a firearm under the seat of the . . . car and . . . I'm a felon. This is someone who took a firearm. We all know that once you actually fire -- you pull the trigger once, the whole world changes as far as law enforcement, everybody else, about the threat level. [Bec]ause now you're willing to pull the trigger. And you pull the trigger, and then you threaten someone you're gonna kill them, and then you bring that. Again, it's like with a school situation. When I threaten a school, that's wholly different than if I actually travel to the school. When you travel to her place of

-5-

work, wow, that just completely changes things, and now you traveled there with weapons. Again, the charges themselves cannot reflect that. . . . The Guidelines cannot reflect all of that here.

Protection of society. Listen, he's had crimes, he was . . . put in prison but way back [in] 1987 for the first time, and he's been in prison since that again. So he's been in prison twice, he's had services available, he's had counseling and rehabilitative . . . services. Probably has had them if not certainly been available to him. He acknowledges that. He acknowledges that he simply wasn't ready, and now he's ready. I . . . wish I could absolutely know your mind and heart and knew that was true, but I don't. And at this point I have to protect society. I have to think of them before I think of you.

I think a sentence above the guidelines is absolutely appropriate here. I think it's clearly proportionate to the nature of the charges, both charges here. I had already written down notes here, and again, I don't talk to the Prosecutor, Prosecutor[] never told me what his thoughts are at all, but I had written down the exact same thing here, a hundred and twenty to thirty-six months [sic] on both charges with credit for, I believe it's accurate, 96 days served.

We granted leave of defendant's challenge to the sentences that departed above the guidelines range.

## II. ANALYSIS

Defendant contends that he is entitled to resentencing because the trial court imposed an unreasonable and disproportionate upward departure from the recommended guidelines range. We agree.[9]

Although a court must score and consider the sentencing guidelines, the guidelines are advisory only. *People v Lockridge*, 498 Mich 358, 365, 399; 870 NW2d 502 (2015). The sentencing guidelines ranges are subject to enhancement when the defendant is a habitual offender. MCL 777.21(3); see *People v Houston*, 261 Mich App 463, 474-475; 683 NW2d 192 (2004), aff'd 473 Mich 399; 702 NW2d 530 (2005). The variables underlying the sentencing guideline range are calculated premised on the preponderance of the evidence, and the prosecutor's statements are

---

[9] To the extent defendant submitted that he was erroneously sentenced premised on hearsay, the Michigan Rules of Evidence do not apply to sentencing. See MRE 1101(b)(3); *People v McFarlane*, 325 Mich App 507, 535; 926 NW2d 339 (2018). Moreover, a trial court's consideration of acquitted conduct at sentencing violates the defendant's due process protections. See *People v Beck*, 504 Mich 605, 629-630; 939 NW2d 213 (2019). Although acquitted conduct may not be used at sentencing, there is no constitutional impediment to preclude a sentencing court for punishing a defendant as if he engaged in uncharged conduct when the sentencing court finds the conduct was proven by a preponderance of the evidence. *Id*. at 626-627.

not evidence. *People v Swift*, 505 Mich 980; 937 NW2d 687 (2020), [10] citing *People v Ison*, 132 Mich App 61, 68; 346 NW2d 894 (1984).[11]

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Dixon-Bey*, 321 Mich App 490, 520; 909 NW2d 458 (2017) (quotation marks and citations omitted).[12]  The appellate court, when reviewing the sentence for reasonableness, applies the abuse of discretion standard. *Id.* "[T]he relevant question for appellate courts reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the principle of proportionality[.]" *Id.* (quotation marks and citation omitted). "An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of principled outcomes." *People v March*, 499 Mich 389, 397; 886 NW2d 396 (2016) (quotation marks and citation omitted).

"A court may depart from the appropriate sentence range established under the sentencing guidelines set forth in chapter XVII if the departure is reasonable and the court states on the record the reasons for departure."  MCL 769.34(3) (footnote and citation omitted); see also MCR 6.425(D)(1)(e) ("At sentencing, the court must, on the record: (e) if the sentence imposed is not within the guidelines range, articulate the reasons justifying that specific departure[.]"). Additionally, the court may not premise "a departure on an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range unless the court finds from the facts contained in the court record, including the presentence investigation report, that the characteristic has been given inadequate or disproportionate weight." MCL 769.34(3)(b). "If the trial judge justifies a departure from the guidelines by stating that he does so because of the nature of the offense and the record of the offender, the trial court has considered these factors twice." *People v Milbourn*, 435 Mich 630, 658-659; 461 NW2d 1 (1990) (citation omitted).

When the trial court departs from the sentencing guidelines, the sentence is also reviewed for reasonableness and must conform with the principle of proportionality. *Dixon-Bey*, 321 Mich App at 520. The principle of proportionality provides:

---

[10] Although only an order from our Supreme Court, such orders constitute binding precedent when their rationale can be understood. *People v Giovannini*, 271 Mich App 409, 414; 722 NW2d 237 (2006).

[11] The *Swift* Court vacated the defendant's score of 10 points for Offense Variable (OV) 4 that was premised "solely on the prosecutor's assertion."  Because the attorney's statement was not evidence and the offense variables must be scored in light of the preponderance of the evidence, the 10-point reduction for OV 4 resulted in a lower sentencing range and entitled defendant to resentencing. *Swift*, 505 Mich at 980.

[12] See also *People v Posey*, ___ Mich ___, ___; ___ NW2d ___ (2023) (Docket No. 162373); slip op at 29 (Opinion by BOLDEN, J.).  ("[A]ppellate courts must review all sentences for reasonableness, which requires the reviewing court to consider whether the sentence is proportionate to the seriousness of the matter.").

[A] judge helps to fulfill the overall legislative scheme of criminal punishment by taking care to assure that the sentences imposed across the discretionary range are proportionate to the seriousness of the matters that come before the court for sentencing. In making this assessment, the judge, of course, must take into account the nature of the offense and the background of the offender. [*Id.* at 520-521 (quotation marks and citations omitted).]

The key test under this principle is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range. *Id.* at 521 (quotation marks and citations omitted). The factors to consider when applying the proportionality standard include:

(1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Lawhorn*, 320 Mich App 194, 207; 907 NW2d 832 (2017) (quotation marks and citation omitted).]

A departure from the guidelines recommendation must result in a more proportionate criminal sentence than the sentence obtainable within the guidelines range. *People v Smith*, 482 Mich 292, 305; 754 NW2d 284 (2008). If the trial court imposes a sentence outside of the guidelines range, it must justify the extent of the departure. *People v Steanhouse*, 500 Mich 453, 476; 902 NW2d 327 (2017); *Smith*, 482 Mich at 305-306. When the trial court fails to provide any explanation for the *extent* of the departure independent from the grounds expressed for a departure sentence, a justification for the departure is lacking and impairs appellate review. See *Smith*, 482 Mich at 305-310. When the trial court fails to provide adequate reasons for the extent of the departure sentence imposed, the remedy is to remand to the trial court for resentencing. *Steanhouse*, 500 Mich at 476.

In imposing defendant's sentence, the trial court cited to defendant's lengthy criminal history and incarcerations, the potential seriousness of the present offenses, and defendant's failed benefits from prior treatment programs. We recognize that the trial court was entitled to determine that defendant's repetitive commission of the same offenses, including driving while intoxicated and being a felon-in-possession, as well as the danger posed by the nature of the offenses were inadequately reflected in the calculation of the sentencing guidelines range. Indeed, the trial court may determine that these factors were given inadequate weight. See e.g., *People v Horn*, 279 Mich App 31, 46; 755 NW2d 212 (2008); *People v Geno*, 261 Mich App 624, 636; 683 NW2d 687 (2004). But, after the court examined the four goals of sentencing, it failed to expressly explain the *extent* of the departure and the reasons why it resulted in a more proportionate sentence under

the circumstances.[13]  See MCR 6.425(D)(1)(e); *Steanhouse*, 500 Mich at 476; *Smith*, 482 Mich at 305-306.  In light of this failure, we vacate defendant's sentences and remand for resentencing.[14]

Vacated and remanded for resentencing.  We do not retain jurisdiction.


/s/ Anica Letica
/s/ Stephen L. Borrello
/s/ Michelle M. Rick

---

[13] Again, it is important to note that a departure from the guidelines premised on the nature of the offense and the record of the offender results in consideration of factors twice.  See *Milbourn*, 435 Mich at 658-659.  Furthermore, the reliance of the facts stated by the prosecutor without the benefit of the actual Eaton County Police Report did not reflect exculpatory information given by defendant to the police or the mitigating information contained therein, and did not examine defendant's history in detail.  For example, the trial court stated that defendant had participated in treatment previously without success.  However, there was no inquiry or evidence presented regarding the type of treatment received, its duration, and when it transpired.  Thus, it was unknown whether defendant received treatment in Illinois prison facilities and whether those programs were consistent with Michigan programs.  Additionally, defendant's criminal record reflected that there were long periods where defendant was not charged with criminal behavior.  There was no inquiry whether those periods were attributable to sobriety or other factors.  In light of the extent of the departure, nearly three times the maximum of the calculated guidelines, the lengthy minimum and maximum periods of incarceration were not explained despite the trial court's concern regarding defendant's criminal record and the potential risk of danger.

[14] In light of our conclusion that defendant is entitled to resentencing, we do not address defendant's contention that his trial counsel was ineffective for failing to object to the prosecutor's recitation of additional underlying facts at sentencing.  At resentencing, the prosecutor must prove adverse factual assertions by a preponderance of the evidence.  *People v Walker*, 428 Mich 261, 268; 407 NW2d 367 (1987).  See also *People v Ewing*, 435 Mich 443, 462; 458 NW2d 880 (1990) (Opinion by BOYLE, J.).  ("[A] sentence must be based on inferences drawn from accurate information and that, when disputed, an unverified offense or activity cannot be relied on at sentencing.").  Although the prosecutor asserted that defendant struck his wife in the chest in Eaton County and sought to engage in "suicide by cop" in Barry County, defendant disputed both of those assertions.  We presume that the trial court will make a record of the consideration of appropriate facts that meet the evidentiary standards for the imposition of a departure sentence, if any, to aid in appellate review.  To the extent the prosecutor argued on appeal that defendant failed to object to his determination to state facts during allocution instead of amending the PSIR, the prosecutor's statements are not evidence and would not be deemed accurate information warranting consideration by a preponderance of the evidence.  *Swift*, 505 Mich at 980.  Moreover, the content of the PSIR and the right of allocution or "opportunity to advise the court of any circumstances they believe the court should consider in imposing sentence" are two distinct considerations.  See MCR 6.425(D)(1)(b) and (c).